CHARLES B. DOCHTERMAN ET AL. v. DUNCAN MARSHALL ET AL.

[46 South., 542.]

1. ADVERSE POSSESSION. *Land suit. Equity. Pleadings. Statute of limitations.*

In an equity suit involving title to land a defendant, shown by his pleadings and the evidence to have acquired title by adverse possession, will not be cast in the suit because of his failure to technically plead the statute of limitations.

2. DEEDS. *Description. General. Particular. Intent of parties. Reformation.*

The rule that a subsequent particular description of land in a deed controls a preceding general description does not apply so as to prevent reformation where its application would clearly do violence to the intent of the parties to the conveyance.

FROM the chancery court of Claiborne county

HON. J. S. HICKS, Chancellor.

Dochterman and another, appellants, were complainants in

the court below; Marshall and others, appellees, were defendants there. From a decree in favor of defendants the complainants appealed to the supreme court.

The facts of the case are sufficiently apparent from the opinion of the court.

*McKnight & McKnight* and *F. A. Polsley,* for appellants.

The court below erred in granting the prayer of the amended cross-bill of Bernheimer for the reformation of his deed to appellant. The record title to the land, described in the deed by legal subdivisions, was in Bernheimer at the time of his conveyance to appellants and was in the vendor of Bernheimer at the time of conveyance to Bernheimer, and there is no attempt whatever by any party to this record to claim that there was any paper title to the land in dispute in any one except appellants and those under whom they hold.

There is not an allegation in all this record of ownership by anybody to any portion of the land in dispute in this suit by adverse possession, and especially does Bagnell not claim the ownership of those sections which were conveyed by Bernheimer to appellants which lie on what they term the "Bagnell side of the fence." Since there is no allegation in the pleadings of title by adverse possession testimony tending to show adverse possession is of no avail. Where there is no *allegata* there can be no *probata.*

Bernheimer should not be permitted to say that although he conveyed the lands in dispute by legal subdivisions, yet if any part of these lands were not a part of St. Alban's then he did not intend to convey it, admitting as he does that he intended to convey all the lands he owned. In other words, he seeks to dodge the claim of Bagnell as to the wire fence being the boundary of St. Alban's, by insisting that the description "St. Alban's" should control the description given by the legal subdivisions, and such is the effect of the holding of the court below. This is condemned by the following authorities: *Carter* v. *Chevalier,* 19 South., 798–800; 16 Cent. Dig. col., 389, sec. 319; (a), (e),

(f), (g) and (h). See cases cited 16 Cent. Dig. col., 405, sec. 324, (b). 16 Cent. Dig. col., 399, sec. 332, (a), (n), (q), (s), (z). "All the land previously conveyed by the third person passes by the deed, though it amounts to . . ." more than the acreage stated. 16 Cent. Dig. col., 395, sec. 320 (t).

The title to the lands in dispute is shown to be in the appellants by record title and there is no allegation nor proof, even if proof could be offered without allegation, showing title in any of the other parties to the suit by adverse possession of the lands described in the conveyance from Bernheimer to appellants.

*E. S., J. T.* and *H. W. M. Drake,* for appellee Bagnell.

The answers of Bagnell clearly and sufficiently show his claim by adverse possession, and his intention to maintain the same.

The bill of complaint itself, filed by appellants, charges adverse possession by and title in Bagnell of the part of the land in controversy.

The entire case was tried in the court below upon the theory that Bagnell was claiming by adverse possession; testimony was taken along this line without any objection being made for this cause, and without any motion to suppress having been made, and the cause was concluded without any intimation being made that objection was had to any of the evidence on that ground.

The suit is in equity, and technical words are not usually used in answers in chancery; the answer in question set up facts which if true, constitute adverse possession and alleged that such facts have existed continuously for more than the statutory period. The allegations follow almost exactly the facts set out in *Metcalfe* v. *McCutcheon,* 60 Miss., 145; *Jones* v. *Gaddis,* 67 Miss., 761, 7 South., 489.

The bill itself sets out that the title to these very lands is in Bagnell, and by fair inference charges that he acquired such title by adverse possession.

Code 1892, § 1758 provides that all objections to depositions

other than to the competency of the witness or the questions or answers thereto, may be taken by motion to suppress or may be made at the hearing.   Neither of these two methods was followed.   The testimony of this appellee, of complainant Dochterman and of Disaroon were all taken upon the question of adverse possession, and no objection of any kind was ever made thereto in any form.   Evidence of adverse possession for the statutory period is always competent in questions of title, and the mere fact that the same was not pleaded in technical language should not be taken advantage of at this stage.

*J. McC. Martin,* for appellee, Bernheimer.

"If a deed is framed contrary to the intention of the parties, in their contract on the subject, by fraud, accident or mistake, a court of equity will either rectify the deed according to the intention of the parties, or will restrain the use of it in the points in which it has been framed contrary to, or in which it has gone beyond, their intention in their original contract."   Mitford & Tyler's Plead. & Prac. in Equity, p. 222.

"The general ground on which all these distinctions proceed, is, that mistake or ignorance of fact in parties, is a proper subject of relief, only when it constitutes a material ingredient in the contract of the parties and disappoints their intention, by mutual error, or where it is inconsistent with good faith and proceeds from a violation of the obligations, which are imposed by law upon the conscience of either party."   1 Story's Equity Jurisprudence (13th ed.), sec. 151.

"One of the most common classes of cases, in which relief is sought, in equity, on account of a mistake of fact, is that of written agreements, either executory or executed.   Sometimes, by mistake, the written agreement contains less than the parties intended, sometimes it contains more, and sometimes it simply varies from their intent, by expressing something different in substance, from the truth of that intent.   In all such cases, if the mistake is clearly made out, by proofs entirely sat-

isfactory, equity will reform the contract, so as to make it conformable to the precise intent of the parties." 1 Story's Equity Jurisprudence (13th ed.), sec. 152..

"However correct it may be as a general rule, it is very certain that courts of equity will grant relief upon clear proof of a mistake, notwithstanding that mistake is to be made out by parol evidence. Lord Hardwicke, upon occasion of this sort, said: "No doubt but this court has jurisdiction to relieve, in respect of a plain mistake, in contract in writing, as well as in frauds in contracts. So that, if reduced into writing contrary to the intent of the parties, on proper proof that would be rectified. And this doctrine has been recognized on many other occasions." 1 Story's Equity Jurisprudence (13th ed.), sec. 153..

"A court of equity would be of little value, if it could suppress only positive frauds and leave mutual mistakes innocently made to work intolerable mischiefs, contrary to the intention of the parties. It would be to allow an act, originating in innocence, to operate ultimately as a fraud by enabling the party who receives the benefit of the mistake, to resist the claims of justice, under the shelter of a rule framed to promote it. In a practical view there would be as much mischief done, by refusing relief in such cases, as there would be introduced by allowing parol evidence in all cases to vary written contracts." 1 Story's Equity Jurisprudence (13th ed.), sec. 155.

"We must therefore treat the cases in which equity affords relief and allow parol evidence to vary and reform written contracts and instruments, upon the ground of accident and mistake, as properly forming, like cases of fraud, exceptions to the general rule, which excludes parol evidence and as standing upon the same policy as the rule itself. If the mistake should be admitted by the other side the court would certainly not overturn any rule of equity by varying the deed, but it would be an equity *de hors* the instrument. And if it should be proved by other evidence, entirely satisfactory and equivalent to an ad-

mission, the reasons for relief would seem to be equally cogent and conclusive. It would be a great defect in the moral jurisdiction of the court, if under such circumstances, it were incapable of administering relief." 1 Story's Equity Jurisprudence (13th ed.), sec. 156.

In the case of *Gillespie* v. *Moon,* a New York case, a bill was filed to rectify a mistake in the conveyance to defendant, which, by error in the description of the land, conveyed the whole lot, or two hundred and fifty acres, instead of two hundred acres, parcel of the same. The mistake was positively denied in the answer, and it was objected that parol proof of the mistake is inadmissible in opposition to the plain language of the deed, and especially in opposition to the defendant's answer. The court said:

"Equity will relieve against a mistake in a deed or contract in writing, upon satisfactory parol proof of such mistake, whether the relief is sought affirmatively, by suit to reform the contract, or by way *of defense* to a bill for specific performance, and this, notwithstanding the fact, that the mistake is denied by the opposite pary." *Gillespie* v. *Moon,* 7 Am. Dec., 559–569.

In the case of *Miller* v. *Morris,* an Alabama case, Edna Morris conveyed to Millers all of S. ½ of Sec. 1, Town 8, Range 4 W. when she only intended to convey all of same, except the S. ½ of the S. E. ¼ of said section. Her deed was a warranty deed. The Millers sued her for breach of warranty, because she had no title to said S. ½ of S. E. ¼. Edna Morris filed a bill enjoining said suit at law, for breach of warranty.

"The court held: An unintentional mistake of a material character in a deed must be clearly proven, but not necessarily beyond all reasonable doubt to sustain a decree reforming a deed." . . . "After a full consideration of all legal evidence the evidence shows beyond all reasonable controversy, not to say beyond all reasonable doubt, that the complainant is entitled to have the deed of conveyance reformed, and the decree

of the chancellor granting the relief must be affirmed." *Miller* v. *Morris,* 27 South., 401, 402.

"In this court, on the present appeal, it is held that it is shown, by the evidence, that there was a mistake in the deed; and that the complainants in the bill were entitled to the relief prayed for. And further, that the fact that the defendants did or did not know at the time the deed was delivered to them, a mistake in the deed being established—that it contained a greater estate than that bargained for—is immaterial." *Dulo* v. *Miller,* 20 South., 981.

"Relief against the operation of a written instrument, on the ground that by fraud or mistake it did not express the true contract of the parties, might be afforded to a plaintiff, seeking a modification of the contract, as well as to a defendant resisting its enforcement." . . . "It is not material whether the instrument is an executory, or an executed agreement, nor is it material whether the proceeding is directly by bill to correct the mistake, or the mistake is set up in the answer by way of defense." *Page* v. *Higgins,* 5 L. R. A., 153 and note.

The case of *Butler* v. *Barnes,* 12 L. R. A., 275–279, with notes, is a strong case, upholding all of the foregoing citations, and is in many respects similar to the case at bar. The court reformed the deed in that case. See, also *Gardner* v. *Moore,* (Ala.), 51 Am. Rep., 457–458.

It so clearly appears from the evidence in the case at bar that *Dochterman and Foster* knew the lands lying *east of the wire fence belonged to Bagnell;* and those lying in Section 40, south of said fence, lots 2, 3 and 4, Section 40, belonged to *Martin;* and that they knew fully the exterior boundaries of St. Albans' Plantation; that it is impossible to conceive how they could possibly contend against the decree rendered by the chancery court herein. Every rule applicable to reformation of a deed affected with error or mistake in description forcefully applies in favor of Bernheimer.

CALHOON, J., delivered the opinion of the court.

Foster and Dochterman filed their bill against divers defendants, all of whom are eliminated except Martin, Bagnell, and Jacob Bernheimer. Foster and Dochterman aver that they are the owners of some two thousand eight hundred acres of land, and they deraign their title through a warranty deed from Jacob Bernheimer, one of the defendants, to them. They charge that they have not been put in possession of all the land in the calls of that deed to them, because, as to some of it, Bernheimer had no title, and because other parcels of it are held and claimed by defendants Martin and Bagnell, as to which they aver that the title and possession of the parcels of land claimed by Bagnell and Martin were, when the deed was executed, and now are, in the said Martin and Bagnell. This much, that the title and possession of these parcels were in Martin and Bagnell, is, of course, formally admitted by them. As to the defendant Martin the conclusion of the chancellor is too clearly right to admit of controversy.

As to Bagnell it is contended in the brief that he must lose here because he did not expressly plead the statute of limitations. But it appears from all the pleadings and all the proofs that Bagnell, and those under whom he claims, have been in the adverse possession of that part of the land for fifty years. The whole case, as to Bagnell's part of the land, was fought out on the idea that he claimed to own the property by adverse possession, and the evidence shows really that he and those under whom he claimed had been in the adverse occupancy for about fifty years. The statute of limitations may be set up either by technical separate plea or in the answer, and Bagnell's answer abundantly shows that he claims by adverse possession, and, as above appears, complainant's bill charges his adverse possession of the part of the land claimed by him. Besides, the very facts set up in his answer show title by adverse possession. So we hold that the chancellor's decree was right as to Bagnell.

As to Bernheimer it will be observed that the charge in the

bill is that the complainants got less by land office numbers than they were entitled to by the description contained in the deed from Bernheimer to them.   Bernheimer's answer is made a cross-bill, which cross-bill prays for a reformation of his deed to conform to the intention of the parties to the sale and purchase.   It is shown in the evidence that Bernheimer, when he made the deed, did not know the boundaries of the land, and he had no knowledge of the land numbers of it.   The property had been known as the St. Albans property for a great number of years.   Bernheimer had bought it as the St. Albans property, he intended to sell it as the St. Albans property, and he avers in his cross-bill that the vendees, Dochterman and his brother-in-law, Foster, knew the boundaries of the land, the real St. Albans property, and that they intended to buy that.   Dochterman had been the manager of the property for many years before Bernheimer bought it.   Dochterman was familiar with the boundaries, and, manifestly, bought it knowing them, and, as we think, perfectly well knowing that Bernheimer designed to sell only the St. Albans property.   We think, without going into the details of it, that the evidence before the chancellor abundantly justified him in decreeing a reformation of the deed which Bernheimer made to conform to the real intention of the parties, and to convey only the St. Albans place by its actual boundaries.   Bernheimer's deed conveys "unto Charles W. Foster and C. B. Dochterman the following described real estate, known as St. Albans, situate, lying, and being in the county of Claiborne, state of Mississippi, to-wit," and then it proceeds to describe the property by land numbers.   While there can be no controversy that a conveyance of land by general description, such as giving the name by which the estate is commonly known, is sufficient, still the general description will be controlled by the subsequent particular description.   But in the particular case before us it seems plain that the intent of the vendor was to convey by the general description and that the intent of the purchaser was to buy by the

general description. Dochterman, one of Bernheimer's ven-
dees, had been for years the manager of the St. Albans property
and was familiar with its boundaries. He was the manager of
it at the date of the purchase, and we gather from the testimony
in this whole record that the real contract was to buy the land
known as the St. Albans land.

*Affirmed.*