New Orleans Great Northern R. Co. *v.* Belhaven Heights Co.

[84 South. 178. In Banc. No. 20955.]

1. Deeds. *Grantee's failure to perform a promise not amounting to a condition no ground for cancellation.*
   The grantor in a general warranty deed cannot maintain a bill in equity for cancellation on account of a mere failure of the grantee to perform a promise forming in whole or in part the consideration, unless such promise amounts to a condition.

2. Railroads. *Deed to railroad construed not to contain any condition precedent or subsequent.*
   The general warranty deed in the case at bar examined, and found to contain on its face no express condition, either precedent or subsequent.

3. RAILROADS. *Nonperformance of parol agreement to build a railroad on the land conveyed is no ground for cancellation.*

In the absence of any element of fraud or oppression, an executed conveyance for a stated money consideration will not be canceled for nonperformance of a contemporaneous parol agreement to build a railroad upon the land granted, where the testimony fails to show a willful intention not to perform such parol promise at the time the deed is executed.

4. RAILROADS. *For nonperformance of agreement to build railroad alternative relief on denial of cancellation held not proper.*

In a suit to cancel a deed to a railroad company for a right of way, no alternative relief in damages for nonperformance of a contemporaneous parol agreement to build a railroad upon the land conveyed can be granted, where the deed itself recites a money consideration that is actually paid, and the nonperformance complained of is not incorporated in or made a condition in the written conveyance.

5. EQUITY. *Equity rule as to forfeiture stated.*

It is a settled rule that equity abhors a forfeiture, and a court of equity will not lend its aid to enforce a forfeiture or divest an estate for breach of a condition subsequent where the vendee is in possession.

APPEAL from chancery court of Hinds county.

HON. LAMAR F. EASTERLING, Chancellor.

Suit by the Belhaven Heights Company against the New Orleans Great Northern Railroad Company to cancel complainant's deed to defendant or for damages. Decree for complainant for damages, but denying cancellation, and defendant appeals. Decree reversed, and bill dismissed.

*Green & Green,* for appellant.

In order that a condition subsequent may be created, the breach of which will cause a forfeiture, it must be created "by express terms or by clear implication," and it must clearly appear that such was the intention of both the parties to the deed. *Soria* v. *Harrison County,* 96 Miss. 109, 50 So. 443, 33 Cyc. 174.

In *Soria* v. *Harrison County, supra,* the deed was upon the consideration of one dollar, and provided that the land was to be for use as a court house and jail and its use for other purpose was held not to create a breach of condition subsequent which defeated the title.

"Subsequent conditions are those which operate upon an estate already vested, and rendered it liable to be defeated. All that remains in the grantor is the position of reverter or right of entry upon condition broken. The estate will remain defeasible until the condition be performed, destroyed or barred by the statute of limitations or by estoppel.

"Equity will never lend its aid to enforce a forfeiture or a penalty or to divest an estate for breach of subsequent condition, even though upon special ground or removing clouds. The rescission of a contract for fraud should be claimed within reasonable time, promptly upon information had of its violation or fraudulent misuse for diversion, or the right will be lost by acquiescence. Complainant cannot remain silent, and without protest, permit erection of buildings and afterwards allege these acts as violation and breach of contract." *Memphis & Charleston R. R. Co.* v. *Neighbor,* 51 Miss. 412.

In that case, the express provision of the deed was to have and to hold the same, with all the appurtenances for the proper use of said railroad company in constructing all warehouses, water stations, machine shops, wagon yards and for other depot purposes, generally; and the bill averred that the grantor was induced to make the deed by fraud and representation to him by the company that he would make these erections, which would greatly enhance the value of the land. There was a demurrer to the bill in that case and the demurrer was overruled by the court below, and on appeal, the supreme court reversed the decree and dismissed the bill.

In *Gadberry* v. *Sheppard,* 27 Miss. 203: A deed conveyed certain lands to the grantees, "under the designation of 'Commissioners to locate a seat of justice in the county of Yazoo.' Held, that these words did not justify construction that an estate, defeasible in its nature, was conveyed."

"To make an estate upon condition subsequent the grant must contain the condition in express words, or by clear implication, because such conditions are not favored in law."

An absolute deed in fee cannot be converted into a deed upon condition that the railroad would be built within a reasonable time. *Butterfield Lumber Co.* v. *Guy,* 92 Miss. 361; *Forrest Products Co.* v. *Buckley,* 66 So. 279; *E. W. Gates Lumber Co.* v. *Britton,* 62 So. (Miss.) 448; *R. R. Co.* v. *Camper,* 88 Miss. 817, was a donation of the land to the railroad company with this express clause in the deed: "It is distinctly understood that the above mentioned lots and rights of way are donated for railroad purposes only." There, the grantor undertook to set up, that at the time of the execution of the deed, it was understood that the railroad company would build its line from Meridian to Jackson, through Hattiesburg and thereby enhance the value of his lots, but that this route was abandoned and a branch line only was built to Hattiesburg, and only a part of the premises granted was used for railroad purposes, and Camper continued to be in possession of the property. The court there held, that the terms of the deed controlled and that whatever of the land was not used for railroad purposes, and abandoned by the railroad company, would be forfeited.

In the case at bar there is no such provision in the deed. It provides: "Whereas, the N. O. & G. N. R. R. Co. desires to acquire for its railroad purposes, the hereinafter described property, now for and in consideration of the sum of ten dollars cash in hand paid, etc."

13—122 Miss.

There is no provision in the deed that the grant is made by the grantor for railroad purposes only.

The deed only recites that the railroad company desires to acquire for its railroad purposes the land thereinafter described.

Where land was purchased "to have and to told as long as said lands are used for railroad purposes and no longer," the railroad company did not lose its right to the land by permitting the grantor to use so much of the land as it was not using, until the company should need it. *Graham* v. *St. Louis & C. R. R. Co.*, 66 S. W. (Ark.) 344. A temporary, non-user is not a breach of the condition. *Hickox* v. *Chicago & R. R. Co.*, 78 Mich. 615; *Monat* v. *Seattle, etc. R. R. Co.*, 47 Pac. 233; *Buck* v. *County of Macon*, 75 Miss. 589, holds: "A deed conveying land to trustees of a township for school purposes, and for no other use is not forfeited by a non-user for two and a half years, even if the deed be assumed to be upon a condition precedent."

There the deed was for a consideration of one dollar, and the grant was "the following described lots or parcels of ground . . . for the use of a school and no other use," and the court, while not expressly deciding that the failure to use it for a school would work a forfeiture, expressly decided that the non-user for a short period of time would not work a forfeiture.

The leases to Massie do not, as averred in the bill, show any abandonment of the property for railroad purposes. On the contrary, they expressly recite that the leases were not to interfere with the railroad, and was only of that part of the land not immediately needed for tracks, and Massie was to clear and grade the right of way. The continued cultivation of the right of way, without the consent of the railroad company, by the owner of the servient estate, gives no right as against the company unless the company's rights are barred by

the statute of limitations. *Wilmont* v. *Railroad Co.*, 76 Miss. 374.

It is common custom in this state to permit the use of the right of way outside of the tracks to the occupier of the adjoining premises, to cultivate the crops. Besides, the proof shows that the leases to Massie had expired in 1914, four years before the suit was brought and that the improvements on the land by Massie had been removed. The averment of fraud in the bill, while denied in the answer, is, in itself, insufficient. It is an averment in the alternative and the allegation of fraud must be made specific.

There is no limit of time expressed in the deed within which the railroad is to be built, and as in the timber deeds where there was no limit of time within which the timber was to be removed, the fee passed, and it was held inadmissible to prove that representations were made by promise procuring the deed, that the timber was to be removed within a reasonable time. Such a stipulation by parole would violate the statute of frauds, by reading into the deed provisions which it did not contain.

Counsel relied below upon the case of *Henderson* v. *Railway Company*, 17 Texas, 560. In speaking of *Henderson* v. *Railway Company*, the court in *City* v. *Lane*, 32 Texas, 414, says: "The object of the suit in *Henderson* v. *Railway Company*, was to cancel certain deeds. The deeds were executed by appellant to Jones, in trust, to be conveyed in fee to appellee, upon the happening of certain conditions precedent, expressed in the deeds. Jones, it was alleged, in fraud of appellant's rights, and without the conditions precedent having happened or being complied with, conveyed the land to the railway company." Thus, this case is not authority for the case at bar.

Examination of the Texas authorities shows that the rule cited by us in 9 So. (Ala.) 21 So. (Fla.) is the rule that applies in Texas to the class of cases where ab-

solute deeds are made with representations or promises as to what would be done.

*C. T. & M. Ry. Co.* v. *Titterington,* 84 Tex. 218, holds: Construction of Deed. In the deed of right of way to appellant executed by appellees is the following recital: 'That for and in consideration of the enhanced value to be and is contemplated to arise to our lands and other property by the location and construction of the .Chicago, Texas & Mexican Central Railway and for the consideration of full and complete value accruing to us by this transaction, in locating and maintaining a station on the lands hereby granted we, etc.'

"The deed in terms conveyed in fee the right of way. Held, that the deed passed the land entirely out of the grantors and to the railway company. It is in no sense executory. A failure to locate or maintain a station might be ground for damages but not for avoiding the deed. The stipulation for a station, etc., is a covenant, not a condition.

"2. Promises—Fraud. Ordinarily, promises to perform some act in the future, although made by one party as a representation to induce the other to enter into a contract, will not amount to fraud in legal acceptation, although, subsequently, and without excuse, broken. But our courts have recognized an exception, expressed with reference to this case as follows: If the railway company at the time it made the representation and promises did so with the design of cheating and defrauding the plaintiffs, and had no intention at the time of performing the promises, but used them merely as false pretenses, to induce the plaintiffs to execute the deed, and if its conduct did have that effect then such acts and declarations, coupled with its subsequent refusal to perform its promises, would authorize the plaintiffs to have the contract rescinded and the land restored to them."

The court's attention is especially called to pages 222 and 223, where it is held that such representations and promises as to what would be done are held not to be conditions precedent or subsequent and that no right to defeat the conveyance arose therefrom, as held by the case in our brief.

On page 223, the court holds: "This brings us to the consideration of the questions of fraud and limitation. It is contended by the appellants that the plaintiff's allegations of fraudulent representations do not show any fraud in legal contemplation, but only false promises to do something in the future for the non-performance of which an action for damages might lie, or for specific performance, but would not give any legal ground for the rescission of the contract. No exception was interposed to the sufficiency of the allegations as formal averments of the fraud and of the facts constituting the same. We shall therefore consider the allegations as sufficient to show the character of the acts and representations relied upon as constituting fraud and as disclosing the intention of the parties at the time of the execution of the deed. We concede that ordinarily a promise to perform some act in the future, although made by one party as a representation to induce the other to enter into the contract, will not amount to fraud in legal acceptation, though subsequently the promise is without any excuse entirely broken and non-fulfilled. This is a plain and well established proposition about which there can be no controversy; otherwise, every breach of a contract would amount to fraud. *Bigham* v. *Bigham,* 57 Texas, 238; 8 Am. & Eng. Ency. of Law, p. 637, note 1. To the above rule, however, we think there is a well founded exception though there is a conflict in the authorities upon the question. It has been distinctly recognized and announced by the supreme court, however, in this state. The exception may be stated as follows, and in reference to the case in

hand: If the railway company at the time it made the representations and promises before mentioned to the plaintiffs, did so with the design of cheating and deceiving the plaintiffs, and had no intention at the time of performing the promises, but used them merely as false pretenses to induce the plaintiffs to execute the deed, and if its conduct did have that effect, then we think that such acts and declarations, coupled with its subsequent utter failure and refusal to perform the promises or assurances, would amount to such actual fraud as would authorize the plaintiffs to have the contract rescinded and the land restored to them. But upon the other hand, if the promises or representations were made in good faith at the time of the contract, and the defendant subsequently changed its mind and failed or refused to perform the promises then such conduct of the company, originating subsequently would not constitute such fraud in legal acceptation as would justify the rescission of the contract or the cancellation of the deed. We rest our decision on the following authorities, beginning with the decision of our own supreme court in an analogous case, which is directly in point and the principle cannot be distinguished from the present controversy. *Henderson* v. *Railway Company,* 17 Texas, 560; *Dowd* v. *Tucker,* 41 Conn. 203; *Wilson* v. *Eggleston,* 27 Miss. 247; *Gross* v. *McKee,* 53 Miss. 536, 2 Scott. 588.''

That case cites and relies upon *Gross* v. *McKee,* 53 Miss. 536, which is directly in point, in denying the right to avoid a deed by reason of promises as to what would be done in the future. There, the deed itself provided for the securing of a note then due and future advances to be made during the year to the amount of one hundred dollars. After having obtained the deed, Loeb & Co. refused to make any advances whatever and caused the trustee to bring an action of replevin for the personal property embraced in the mortgage. The court

charged the jury for the plaintiff that he was entitled, to recover by reason of the note for two hundred and fourteen dollars being unpaid although Loeb & Co. had refused to make any further advances unless they believed that the defendant had been fraudulently entrapped into executing the instrument by the parties.

For the defendant, the jury was substantially charged, that if they believed that the promises to make the future advances, had been fraudulently used by Loeb & Co. as a means to decoy the defendant into securing the whole debt, and with no intent, in fact, of making such advances, they must find for the defendant. We see no objection to these charges. They announce principles both sound in law and morals."

This case is conclusive of the proposition here, for it it not pretended that Anderson used this deed to entrap the complainant. The subsequent failure of the company to perform, if they were bound to perform, would not be ground of rescission, as held in all of the cases to which we have called the court's attention.

*Mayes & Mayes,* for appellee.

Equity will enforce a forfeiture for breach of condition subsequent. Our opponents say that equity will not enforce a forfeiture for a breach on a condition subsequent. As to that, they are dead wrong; an estate is defeasible and the deed will be cancelled for breach of a condition subsequent. *M. & C. R. R. Co.* v. *Neighbors,* 51 Miss. 412; *V. & M. R. R. Co.* v. *Ragsdale,* 54 Miss. 200; *Townsend* v. *Hurst,* 37 Miss. 679.

Since the rendition of the decision above cited section 160 has been added to our Constitution, which section is as follows: "Section 160. And in addition to the jurisdiction heretofore exercised by the chancery court in suits to try title and to cancel deeds and other clouds upon title to real estate, it shall have jurisdiction in such

cases to decree possession, and to displace possession; to decree rents and compensation for improvements and taxes; and in all cases where said court heretofore exercised jurisdiction, auxiliary to courts of common law, it may exercise such jurisdiction to grant the relief sought, although the legal remedy may not have been exhausted or the legal title established by a suit at law.''

You will recall that it was a rule that before the heirs could recover from the sureties on an administrator's bond for a devastavit by the administrator it was necessary to first sue the administrator in court of law and there establish a *devastavit;* and to then file a new suit in equity against the sureties on the bond. But all of that has been changed. In modern times our constitutions and statutes make it proper to establish *devastavit* against the administrator and to obtain a judgment against the sureties on the bond therefor in one and the same suit in equity.

It will be noticed that while the court in the decision just cited above, mentioned it to be the general rule (at that time that the forfeiture could not be decreed in a court of equity still in each and every one of those cases the court in its most commendable desire to do equity found some excuse in the facts and circumstances prevailing in those cases, to give the complainant the relief which he sought, notwithstanding the general rule that equity would not entertain jurisdiction in such cases.

So we say that under the common law the rule is and the authorities cited above show that an estate is defeasible and deed will be cancelled for breach of a condition subsequent; and that this law which is announced by these authorities is still the law, and these cases are excellent authorities in our favor on this point. However, the one point there announced to the effect that equity has no jurisdiction in such cases has been changed by recently enacted laws.

There cannot be any doubt that the rule is that the court of equity is the only court which can cancel a deed and expunge it from the deed records. Certain it is that equity will have jurisdiction of any case where the prayer is that a deed be cancelled and expunged from the record. It is also well settled under our more modern decisions that where a court of equity acquires jurisdiction on one phase of a case it has the power, and in fact must dispose of the entire controversy. *Baker* v. *Nicholas,* 72 So. —.

Deed will be cancelled although conditions are not set out in its face. Not only is it true that an estate is defeasible and a deed will be cancelled for the breach of a condition subsequent; but it is equally well settled that this will be done though the condition subsequent is not set out in the face of the deed. In other words, it has been expressly decided that a deed absolute on its face but obtained upon a condition which was never fulfilled by the grantee, will be cancelled. *Taylor* v. *Strong,* 10 Smedes & M. 63; *Cocke* v. *Blackbourn,* 57 Miss. 689; Wharton, Evid. Pars. 928, 1044; *Pierce* v. *Woodward,* 6 Pick. (Mass.) 206; *Butler* v. *Smith,* 35 Miss. 457. Under our statute, Code 1871, par. 605; *Mayer* v. *Casey, ante,* 57 Miss. 615; *Baker* v. *Prentiss,* 6 Mass. 430; See, also, *Brewer* v. *Harris,* 2 Smedes & M. 84; Two Paige (N. Y.) 84 par. 49; Century Digest, title Vendee and Purchaser, par. 227. See also the batch of authorities next cited below: *Cocke* v. *Blackbourn,* 57 Miss. 689; *Wimberly* v. *Wortham,* 3 So. 459.

Where a trust deed offered by plaintiff was assailed for fraud, plaintiff is not estopped, but has equal right with defendant, to show the truth as to its consideration, no matter what may be the recitals or statements of the deed: See, also, *Fry* v. *Prewitt,* 56 Miss. 783; *Grayson* v. *Brooks,* 1 So. 482; *Ohleyes* v. *Bernhein,* 7 So. 319; *Millsaps* v. *M. & P. Bank,* 13 So. 903; *Buck* v. *Cunningham,* 6 Smedes & M. 358.

"The rule of law that parol testimony cannot be heard to vary written agreements, has never been carried so far as to defeat the right to prove a failure of consideration." *Norton* v. *Cooley,* 45 Miss. 125; *V. & M. R. R. Co.* v. *Ragsdale,* 54 Miss. 200; *Estell* v. *Myers,* 54 Miss. 174; *Anderson* v. *Hill,* 12 Smedes & M. 679; *Townsend* v. *Hurst,* 37 Miss. 679.

"Fraud saps the foundation of every contract in which it exists, and, where it evinces that a plaintiff is not entitled to recover anything because of its existence, is properly cognizable by a court of law. It has also frequently been decided, that a failure of consideration, as well partial as total, may be introduced legitimately in evidence in an action at law upon a promissory note because such defense may diminish the multiplicity and circuity of actions, which it is the policy of the law to discourage. These points have been so often settled that they demand no reference to authorities in their support." *Davis* v. *Heard,* 44 Miss. 50; *Norfleet* v. *Beall,* 34 So. 328; *Powell* v. *Plant,* 23 So. 399; *Nabourns* v. *Cocke,* 24 Miss. 44; *Newman & Beck* v. *Mee,* Freeman, Chancery, 441 (Miss.) —; 6 Cyc. 286, Par. B.

The proof in a case at bar shows that the railroad company is in possession of the complainant's land and trying to hold the same under a deed for which it has paid only the sum of ten dollars; that the land comprises about twenty-four acres and is worth from sixty dollars to one hundred dollars an acre, as the witness put it; that the railroad company has given the complainant nothing as an equivalent for this land, but has paid only ten dollars, when it costs twenty-five dollars to execute the deed. We submit that this inadequacy of consideration is so gross as to amount to proof of fraud.

False representation, though not known to be such vitiates the contract. It is also equally well settled that where one party relies on representations made by other party and it subsequently developes that those repre-

sentations were not true, the first party can rescind the contract, and that is true regardless of whether or not the party who made the misrepresentations, knows them to be false. *Rimer* v. *Dugan,* 39 Miss. 477; *Davis* v. *Heard,* 44 Miss. 50; *Dodd & McNair* v. *Norfleet & Rosenborough,* 74 So. 577; *Vincent* v. *Corbitt,* 47 So. 614; *Estell* v. *Myers,* 54 Miss. 174.

*Abandonment of the railroad project.* The next subject to which we wish to direct the court's attention is that of the abandonment by the railroad company of its intention, if it ever had any, of using the land in controversy for railroad purposes. The proof showing complete abandonment of this railroad project is as clear and convincing as the midday sun. In the first place the delay of nine years after its promise to begin work in ninety days, is in itself sufficient to support a finding that the project has been completely abandoned, certainly it would call for a clear and convincing showing on the part of the railroad company that it had not abandoned the project. But so far, as to their making that clear and convincing showing, the railroad company has not even given us a promise or the slightest ground for hope that the road would be built some day. To prove abandonment we have introduced evidence of more than mere delay.

As already stated the proof shows conclusively that the railroad company has abandoned its intentions, if it ever had any, of building a railroad on the right of way. In any event the chancellor has found as a fact that it has abandoned its intention and the proof is certainly strong enough to support such a finding, especially in view of the fact that the railroad company has not made any showing of intent to take up and complete the work some time.

In conclusion, we wish to say that the preparation and trial of this case has not been without its difficulties, but all the way through we have pinned our faith to that oft quoted and time honored maxim "There is no wrong without a remedy." If this old maxim has the meaning and

force in our jurisprudence that is generally attributed to
it by laymen and lawyers, alike, it will be controlling in
this case, because any fair-minded man who reads this
record will be at once impressed with the fact that this
record presents a case where a wrong has been done the
Belhaven Heights Company, and of course there must be a
remedy.  It has not been the experience nor observation
of this court that one man will convey to an utter stranger
a valuable piece of land worth over fourteen hundred
dollars without some promise or assurance from that
stranger or something to be paid or something to be done
by way of the consideration for conveyance; and the con-
tention of our opponents that that conveyance in the case
at bar was an unconditional gift from the Belhaven
Heights Company to the N. O. G. N. Railroad Company
is one which will not appeal to this court at all.  It is
perfectly manifest that there was a definite promise or
condition as a consideration for this conveyance, yet the
fact which stands out above all others in this record is
that the railroad company has not done anything and has
not paid anything and does not now promise to do or to
pay anything for this land; but, on the other hand this
railroad company has the hardihood to come before this
court and ask that this court aid it in keeping this land of
the Belhaven Heights Company without its paying any-
thing or doing anything as an equivalent therefor.  But
this court will not lend its aid to any such unrighteous
undertaking.  A plainer case than the one at bar where
the complainant has been wronged and is entitled to a
remedy cannot be conceived of.  This is the way the case
impressed the chancellor and he felt compelled either to
cancel the conveyance or to give the complainant a money
decree for the value of the land taken.  While the decree
in this case is not at all what we expected and hoped for,
still it does substantial justice in this case and certainly
it is not a decree of which the railroad company can find

just ground for complaint.   The decree of the lower court should be affirmed.

Stevens, J. delivered the opinion of the court.

Appellee sued in equity to cancel a certain deed executed by it to the New Orleans Great Northern Railroad Company for a strip of land two hundred feet wide in the northeast part of the city of Jackson, Miss., as described in the deed, to be used as a right of way. The bill avers that one Anderson, as the agent and representative of the railroad company, stated and represented to Mr. Coman, secretary of appellee company, that if the complainant, would donate or sell to the railroad company the strip of land in question, the railroad company would within a reasonable length of time construct a steam railroad for the transporation of passengers and freight over and along the said strip of land, and that the construction and operation of the road would enhance the value of the appellee's adjoining lands in that vicinity; that, acting upon the said representations and promises of appellee's authorized agent, the complainant executed the deed for a stated consideration of ten dollars; that no part of the consideration had been paid; that the railroad company, although an unreasonable length of time had elapsed, has failed to build the said railroad at any point on or along the said strip, but has leased a portion of the lands for farming purposes; that the promises and representations of appellant's agent were false and misleading and made for the purpose of inducing complainant to donate the right of way at a grossly inadequate price.   The bill further contains allegations of fraud.   The prayer of the bill is that the deed be canceled, or that complainant be awarded a decree for the fair value of the land as damages.   Those recitals in the deed material to the present inquiry are as follows:

"Whereas, the New Orleans Great Northern Railroad Company desires to acquire for its railroad purposes the hereinafter described property, now, for and in consideration of the sum of ten dollars, cash in hand to it paid by said New Orleans Great Northern Railroad Company, a railroad corporation of the state of Mississippi and Louisiana, the receipt of which is hereby acknowledged, I, Belhaven Heights Company, a corporation duly chartered, organized, and existing under the laws of the state of Mississippi, do hereby sell, convey, and warrant unto the said New Orleans Great Northern Railroad Company, its successors and assigns," etc.

"Also hereby, for the consideration aforesaid, acknowledge satisfaction for and hereby release said railroad company, its successors and assigns, from all damages to me, and to any and all of any abutting property from the construction and operation of its railroad upon, over, and across said hereby conveyed land, and over and across any of the streets of said city."

General and special demurrers were interposed to the bill and overruled. Thereupon appellant filed an answer, and the cause proceeded to trial upon bill, answer, and proof. Mr. Coman, as a witness for the complainant, testified that Mr. Anderson, approached him, stated that he had observed that all attempts to build the railroad had been a failure, and that he had made trips to New York City and was authorized to state that the road would be built and that work would commence within less than ninety days after the right of way through this property was obtained. Negotiations led to the definite agreement stated in the deed; that is that Belhaven Heights Company a corporation agreed to execute a general warranty deed in consideration of ten dollars; the deed was accordingly executed, and a voucher for the ten dollars was given and paid. At the same time Mr. Anderson asked for and received an option upon other lands owned by the Belhaven Heights Company, and for

this option appellee received five hundred dollars. The lands covered by the option "immediately adjoined this land where the right of way was." When the parties came to write the deed, Mr. Coman asked for a provision to be incorporated in the deed expressly providing that the "land would revert to me if the road was not built in five years," and in response to this Anderson "said that they did not want to take the deeds that way," and said further "that he had instructions not to take any deeds with strings to them." Mr. Coman at one place in his testimony admits that the deed "speaks for itself." The option was introduced in evidence, and recites, among other things that "whereas, said Belhaven Heights Company has by a deed of even date herewith conveyed to the New Orleans Great Northern Railroad Company a strip of land in the county of Hinds, state of Mississippi, described," etc., and furthermore bound the company, in event the railroad company exercised its option to buy, to execute a deed which "shall be in the same form [description excepted] and contain the same covenants as are contained in the deed this day executed to said railroad company."

There is testimony tending to prove that Belhaven Heights Company conveyed to other parties lands adjoining and with reference to the right of way now sought to be cancelled, and one of these parties intervened in this suit and objected to the cancellation of the railroad right of way; also that the right of way as conveyed was marked out by stakes, and that the city of Jackson located its pumphouse and filtration plant for the city waterworks on the right of way in controversy and acquired the necessary lands from appellee company with the view ultimately of securing coal over the line of the said railroad company. The testimony further shows that the railroad company encountered obstacles in acquiring the right of way in and through Jackson and that in order to secure the projected right

through East Jackson a committee of leading citizens with W. M. Anderson, president of the Merchants' Bank & Trust Company, as chairman, agreed in writing with the railroad company that the committee would secure the necessary right of way through East Jackson at a total consideration not exceeding eighty thousand dollars and under this agreement the railroad company deposited in the Merchants' Bank moneys upon which Anderson drew in paying for the deeds. Neither Mr. Coman nor any of the other officers or agents of appellee company participated in the citizens' committee meetings and both parties to the deed appear to have acted in good faith and believed that the railroad would be constructed within a reasonable time. The chancellor found and held that the complainant is estopped to have the deed to the right of way canceled because of the conveyances to other abutting property owners who have acquired rights in and with reference to the right of way. The chancellor further found that there is no actual fraud shown by the testimony, and that the proof does not show that the railroad company did not intend to build the road at the time the deed was executed. But the chancellor found that in his opinion ten dollars was a grossly inadequate consideration, that the real consideration was benefits to be acquired from the construction of the road, and that on account of the failure to construct "the defendant company now holds and had rented and used and occupied for other than railroad purposes twenty-five acres of land of the complainants for which it has only paid the sum of ten dollars," and proceeded to render a decree for the value of the property at the time the deed was executed with interest at six per cent. per annum or total sum of one thousand four hundred and thirty dollars with interest. It appears that appellant has in fact constructed a standard gauge railroad into the city of Jackson, but the road has never been constructed through or beyond Jackson,

and no assurance is given as to when this can or will
be done.  The deed was executed April 15, 1910, and the
bill was filed in March, 1918.  The appeal challenges the
relief granted by the chancellor both upon the law and
the facts.

It will be observed that the chancellor denied a can-
cellation of the deed, but granted the alternative prayer
for relief in damages.  There is practically no conflict
in the testimony.  The main inquiry is whether the de-
cree is justified by the law.  In *Dixon* v. *Milling,* 102
Miss. 449, 59 So. 804, 43 L. R. A. (N. S.) 916, our court
expressly held that a failure of the grantee to provide
maintenance or support constituting the consideration
for a deed absolute in form was not sufficient to support
a bill for cancellation, and the court by Judge Reed
quoted with approval the following observations of Mr.
Pomeroy:

"The general rule [is] that the mere failure by
grantee to perform a promise, which formed the whole
or part of the consideration inducing an executed con-
veyances, gives rise to no right of rescission in the
grantor, either at law or in equity, unless such promise
amounts to a condition; and it is a rule of construction
that, in case the language or intention is doubtful, the
promise or obligation of the grantee will be constructed
to be a covenant, limiting the grantor to an action there-
on, and not a condition subsequent with the right to de-
feat the conveyance."  Pomeroy's Equity Jurispru-
dence, vol. 6, section 686.

This ruling was reaffirmed in *Lee* v. *McMorries,* 107
Miss. 889, 66 So. 278, L. R. A. 1915B, 1069, and in *Low-
ery* v. *Lowery,* 111 Miss. 153, 71 So. 309.  In the case at
bar there is no condition expressed in the deed.  The
deed is a general warranty deed with the usual cove-
nants.  There is in the deed under review neither a con-
dition subsequent nor an express covenant to do or per-
form anything.  The sole hope for relief must be based
14—122 Miss.

upon a breach of an illegal contemporaneous parol agreement by appellant to build a railroad and in doing so to commence construction in ninety days after the right of way was secured. There is no proof of fraud. The chancellor so held. There is no proof that either Anderson, the agent, or the officers of appellant company, intended to accept the deed knowing that the road would not be built. It was evidently within the contemplation of the parties that the road would be constructed, but this contemplation was in good faith. Appellant expressly refused to accept a deed with any conditions or limitations. This was expressly brought to the attention of Mr. Coman, and, notwithstanding the contemporaneous discussion on this point and the refusal of appellant to accept anything but a warranty deed, appellee, thus fully advised and put on notice, deliberately executed the conveyance in question for the actual stated consideration of ten dollars. Can appellee now be heard to say that the consideration is otherwise? If there be a contemporaneous parol agreement, what was in fact the agreement? The officers of appellant company were never confronted with the necessity of stating any agreement whatever in reference to the building or operation of the road. There was no definite agreement to build a road of any kind. If there can be said to be an agreement at all, it is an oral agreement and unenforceable. If there was any element of fraud, oppression, or in fact the willful intention at the time not to build a railroad, a different case would be made for the complainant. There is perhaps an inadequate consideration, but this is not at all certain if due consideration is given to the option and other conveyances executed by appellee in prospect or anticipation of the construction of the railroad. The very fact that the right of way had been surveyed and staked and deeds acquired by appellant very probably enhanced the value of complainant's other lands. The record shows

that appellee executed conveyances recognizing the right of way; and the rights of innocent third parties have intervened. If the consideration is grossly inadequate, then equity would lay hold of slight circumstances of oppression to rescind the contract. 9 C. J. 1176. But the consideration cannot be said to be so grossly inadequate as to shock one's conscience. Neither is there any element of fraud or oppression. There are other manifest difficulties. The consideration was agreed upon and stated; no other consideration is expressed in the deed. In this respect the case is differentiated from many cases where the deed obligates the grantee to do or perform some contract in the future. In the case of *Chicago, etc., R. R. Co.* v. *Titterington*, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39, the court refused to cancel the right of way to the railroad company for nonperformance of the grantee's agreement to construct a railroad and locate a station on the land granted, though the court did strongly intimate that a suit to recover damages and to charge the land with a lien might be upheld. But the deed in that case contained the following recital of consideration, viz.:

"That for and in consideration of the enhanced value to be given and is contemplated to arise to our lands and other property by the location and construction of the Chicago, Texas & Mexican Central Railway, and for the consideration of full and complete value accruing to us by this transaction in locating and maintaining a station on the lands hereby granted, we," etc.

Notwithstanding this consideration expressed in the deed, the court by Marr, Judge, observed:

"But conditions of this character are not favored by the courts, and in case of doubtful language or intention the promise or obligation of the grantee will be construed to be a covenant limiting the grantor to an action thereon, and not a condition subsequent with the right to defeat the conveyance. Under the authorities, we

think that it must be held, and we do hold, that the promises or obligations of the railway company referred to in the deed are in the nature of covenants, not conditions, and therefore the plaintiffs, aside from the other questions in the case, could not reclaim the land itself on account of the nonperformance of the covenants or promises by the grantee, but would be required to sue for damages arising from the breach of the contract.''

Counsel for appellee very confidently rely upon the older case of *Henderson* v. *San Antonio, etc., R. R. Co.,* 17 Tex. 560, 67 Am. Dec. 675. An examination of the Henderson Case shows that the plaintiff executed two deeds to one Jones in trust for the railroad company when the latter should be fully organized and have about twenty miles of road under contract and the route so located as to cross a certain creek, etc. It would appear that the deeds were made upon false representations by an agent, and the stipulated conditions were conditions precedent. This is made certain by the observations of the Texas court in the later case of *City of San Antonio* v. *Lane,* 32 Tex. 414, where, in speaking of the Henderson Case, the court said:

''The deeds were executed by appellant to Jones, in trust, to be conveyed in fee to appellee, upon the happening of certain conditions precedent, expressed in the deeds. Jones, it was alleged, in fraud of appellant's rights, and without the conditions precedent having happened or being complied with, conveyed the land to the railroad company.''

Under this interpretation of the Henderson Case it has no controlling application. In the case at bar there was no condition stipulated in the deed, either precedent or subsequent. It is the settled rule in this state that equity abhors a forfeiture and will not lend its aid to enforce a forfeiture or divest an estate for breach of a condition subsequent where the vendee is in possession. *Memphis & Charleston R. R. Co.* v. *Neighbors,*

51 Miss. 413; *Thornton* v. *Natchez,* 88 Miss. 1, 41 So. 498; *Soria* v. *Harrison County,* 96 Miss. 109, 50 So. 443.

The views of this court in *Railroad Co.* v. *Kamper,* 88 Miss. 817, 41 So. 513, are suggestive. There the deed expressly provided that the land conveyed was to be used "for railroad purposes only."

But we are not directly concerned on this appeal with the right of appellee to a cancellation. The prayer for cancellation was denied by the chancellor, and there is no cross appeal. Our views lead to the conclusion that no relief whatever can be granted, and that the decree for damages should be reversed. If an improvident contract has been made by appellee company, it can blame no one but itself. It is not beyond the realm of possibility for the right of way yet to be utilized for railroad purposes. The decree complained of will be reversed, and the bill dismissed.

Reversed, and decree here for appellant.

*Reversed.*