919 So.2d 200 (2005)
Dana MASON, Appellant,
v.
Clyde MASON, Jr., Appellee.
No. 2002-CA-00509-COA.
Court of Appeals of Mississippi.
June 7, 2005.
*201 Marc E. Brand, Jackson, attorney for appellant.
W. Jeffrey Collier, William Larry Latham, Ridgeland, attorneys for appellee.
EN BANC.
BRIDGES, P.J., for the Court.
¶ 1. Clyde and Dana Mason divorced by order of the Madison County Chancery Court. Incident to their divorce, Clyde and Dana entered a child custody and property settlement agreement. On February 20, 2001, the Madison County Chancery Court made the property settlement *202 agreement part of the judgment for divorce. In December of 2001, Clyde filed a motion to interpret agreement and specifically asked the Madison County Chancery Court to interpret paragraph sixteen of the property settlement agreement.
¶ 2. Paragraph sixteen dealt with the filing and payment of joint state and federal income tax deficiencies or liabilities arising out of joint tax returns for 1998, 1999, and 2000. Specifically, that paragraph stated:
The parties agree that, according to Judge Gail Shaw-Pierson's Order, they will cooperate with one another in filing joint state and federal income tax returns for 1998, 1999 and 2000 with the understanding that they will be equally responsible for any income tax deficiencies and/or liabilities arising out of the said joint returns, but with the Wife's total contribution for all three years not to exceed Thirty Thousand Dollars ($30,000.00) (this amount includes any accounting fees), with the Husband to pay all of the remainder.
¶ 3. The chancellor determined that Dana had satisfied her obligations under paragraph sixteen. However, the chancellor also determined that Clyde and Dana would have to split equally any penalties and interest that might accrue for filing late tax returns in 2000. The record is not entirely clear as to who bore the responsibility for the late tax return. Portions of the record indicate that Dana was at least partially responsible for the late 2000 tax return because Dana refused to sign the return. For example, the following exchange took place before the chancellor:
Mr. Reeves: The IRS wrote Mr. Mason and told him he owes $6,000 in penalties and interest because the tax return was filed late. It was filed late because she wouldn't sign it, and Ms. Reeves testified to that. She wouldn't come sign it, Judge. Why should he pay the penalties and interest when she wouldn't sign the darned thing until you made her do it?
The Court: Now what's your concern about that?
Mr. Reeves: I want you to make her pay that. Why is it his fault she wouldn't sign the return? She didn't sign it until you make her do it in court that day. You ordered her to sign it in court that day. Now, had she signed it when you told her to several months earlier, we wouldn't have this problem, That's it.
The Court: I do recall the situation regarding the tax, and I do recall the witness on the witness stand saying that the tax payments were ready on that particular day, and I do recall there being some discords as to why things had not been signed prior to  pursuant to notices that had been given.
If there is a tax penalty stemming from failures of these parties on tax obligations for 1998, 1999, 2000, those obligations are to be shared. Anything further?
Mr. Reeves: No, Your Honor.
¶ 4. Unfortunately, the portion of "Ms. Reeves" testimony is not within the record. If that exchange is inconsistent with the facts of this case, Dana's counsel did not object. It appears that the chancellor, having heard the testimony, recalled the relevant events. Where we find substantial evidence in the record supporting the findings of fact, we will seldom reverse, whether those findings be of ultimate fact or evidentiary fact. Sproles v. Sproles, 782 So.2d 742(¶ 12) (Miss.2001). (citations omitted). Said differently, unless the chancellor's determination of fact in a divorce case is manifestly wrong, this Court will uphold the chancellor's decision. *203 Id. Our deference to the chancellor's findings, coupled with the corresponding portions of the record and the lack of an objection, indicates Dana was at least partially responsible for the late tax return, but for which year?
¶ 5. While the exchange before the chancellor does not specifically refer to the tax return for the year 2000, other portions of the record clarify that the chancellor was referencing the tax return for the year 2000. The chancellor's order on Clyde's motion to pay penalties and interest states that "the 2000 joint income tax returns were prepared and ready to be signed and filed within the IRS and Mississippi State Tax Commission deadlines for filing without penalties and interest, but said returns were not filed timely." Finally, Dana's appeal brief states that "Clyde's counsel urged the Court to require Dana to pay one-half of any penalty and interest which had accrued as a result of the late filing of the 2000 tax return." Thus, it appears that Dana was at least partially responsible for the late filing of the couple's 2000 tax return.
¶ 6. Dana, aggrieved by the chancellor's ruling, appeals the chancellor's decision to require her to pay one-half of any penalties and interest for filing late tax returns in 2000. Dana asks this Court to resolve the following issue:
I. Whether the chancellor erred in requiring Dana and Clyde to share equally in any penalties and interest assessed by the IRS and Mississippi State Tax Commission as a result of the late filing of the parties' 2000 joint income tax returns.
Finding no error, we affirm the chancellor's decision.

STANDARD OF REVIEW
¶ 7. This Court will not disturb a chancellor's findings unless they are manifestly wrong, unsupported by credible evidence, or the chancellor applied an erroneous legal standard. Bell v. Parker, 563 So.2d 594, 596-7 (Miss.1990). However, this Court reviews questions of law under the de novo standard. Armstrong v. Armstrong, 836 So.2d 794(¶ 10) (Miss.Ct.App. 2002) (citations omitted). Contract interpretation involves a question of law. Id.

ANALYSIS
I. Did the chancellor err in requiring Dana and Clyde to share equally in any penalties and interest assessed by the IRS and Mississippi State Tax Commission as a result of the late filing of the parties' 2000 joint income tax returns?
¶ 8. Dana argues that the chancellor had no basis to assess her with penalties and interest that accrued for filing tax returns late in 2000. She argues that, by doing so, the chancellor altered and modified her liability under paragraph sixteen. Clyde argues that the provisions of paragraph sixteen are ambiguous.
¶ 9. Paragraph sixteen contains two clear provisions pertinent to the resolution of this dispute. First, Clyde and Dana are bound to share the tax liabilities for the years 1998, 1999, and 2000 "with the understanding that they will be equally responsible for any income tax deficiencies and/or liabilities arising out of the joint returns." Second, Dana's contribution cannot exceed $30,000.
¶ 10. According to the plain meaning of these two provisions, Dana is obligated to share tax liabilities up to a $30,000 contribution. According to the chancellor's order on Clyde's motion to interpret the agreement, Dana satisfied her obligation under paragraph sixteen of the property settlement agreement. There is no dispute about whether Dana satisfied her *204 contribution obligation. However, this dispute hinges on the chancellor's interpretation of the character of the penalties and interest as a result of the late filing of the 2000 joint income tax returns. The chancellor determined that the tax penalties and interest did not fall within the tax deficiencies or liabilities as contemplated in the property settlement agreement.
¶ 11. It follows that the question before this Court is whether the penalties and interest fall within "any income tax deficiencies and/or liabilities arising out of the joint returns." If the answer is "yes," then the chancellor erred. However, if the answer is "no," then we must affirm the chancellor's decision.
¶ 12. A property settlement agreement is a contract. Armstrong v. Armstrong, 836 So.2d 794(¶ 10) (Miss.Ct. App.2002). Here, Clyde and Dana contracted in contemplation of "deficiencies and/or liabilities arising out of" joint income tax returns. The penalties and interest in question arose because Clyde and Dana filed late income tax returns for 2000. Clyde and Dana entered the property settlement agreement on February 9, 2001 prior to the income tax filing deadline for the 2000 tax year. Paragraph sixteen makes no specific mention of late tax filings. It is possible that the resulting penalties and interest could be included as a "deficiency and/or liability" that arose out of filing the 2000 joint income tax return. Still, it is equally possible that paragraph sixteen, by excluding any mention of a possible late filing, did not presume any penalties and interest. It is impossible to predict what exactly processed in Clyde's or Dana's mind at the time they entered the property settlement agreement. It follows that paragraph sixteen is ambiguous as to whether the penalties and interest for the late 2000 income tax return falls within "deficiencies and/or liabilities." Ambiguities in contracts are construed against the drafter. Banks v. Banks, 648 So.2d 1116, 1121 (Miss.1994). Since Dana's attorney drafted the property settlement agreement, we must construe the ambiguity against Dana. Accordingly, we affirm the decision of the chancellor.
¶ 13. THE JUDGMENT OF THE MADISON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE, P.J., MYERS, CHANDLER, BARNES AND ISHEE, JJ., CONCUR. IRVING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRIFFIS, J.
IRVING, J., Dissenting.
¶ 14. I cannot agree that interest and penalties stemming from the late filing of the parties' 2000 tax return are not liabilities arising out of the filing of their 2000 tax return. Therefore, I respectfully dissent from the majority's decision to affirm the judgment of the trial court.
¶ 15. As stated by the majority, the judgment of divorce provided that Dana and Clyde would file joint state and federal income tax returns for the years 1998 through 2000, and each of them "[would] be equally responsible for any income tax deficiencies and/or liabilities arising out of the said joint returns, but with [Dana's] contribution for all three years not to exceed Thirty Thousand Dollars ($30,000)."
¶ 16. The majority acknowledges that there is no dispute regarding Dana's satisfaction of her obligation under the provision of the judgment of divorce discussed in the preceding paragraph. In other words, prior to being assessed with penalties and interest for the late filing of the 2000 return, Dana had already expended *205 $30,000 in satisfaction of her tax obligation for the years in question.
¶ 17. I would find that Dana had fully satisfied her obligation under the terms of the judgment of divorce when she expended $30,000 toward the satisfaction of the parties' tax obligation for the returns covered by the provision in question.
¶ 18. The terms of the judgment of divorce on this point are clear. Paragraph XVI of the child custody and property settlement agreement which was incorporated into the judgment of divorce states:
The parties agree that, according to Judge Gail Shaw-Pierson's Order, they will cooperate with one another in filing joint state and federal income tax returns for 1998, 1999 and 2000 with the understanding that they will be equally responsible for any income tax deficiencies and/or liabilities arising out of said joint returns, but with the Wife's total contribution for all three years not to exceed Thirty Thousand Dollars ($30,000.00) (this amount includes any accounting fees), with the Husband to pay all of the remainder. Also, the Husband agrees to refund to the Wife the payment made by her to the Internal Revenue Service for her 1999 individual tax return in the total amount of Nine hundred Ninety-Four Dollars ($994.00). This amount shall be refunded to the Wife at the time that the 1998, 1999 and 2000 joint tax returns are mailed to the Internal Revenue Service.
¶ 19. In affirming the chancellor's decision to require Dana to pay more than the judgment of divorce required of her, the majority acknowledges that the record is insufficient to make a determination as to the party at fault for the late filing of the 2000 federal tax return, but nevertheless, attempts to justify its decision by suggesting that Dana was responsible for the late filing of the return, thus causing the additional penalties and interest.
¶ 20. I agree with the majority that the record is insufficient to make a determination as to the party responsible for the late filing of the return, but, while, at first blush, the assessment of fault may appear to be a sufficient premise upon which to predicate additional liability to Dana, a closer look at the record, however, reveals that such a foray is not a fecund adventure. I resort to the record to make my point.
¶ 21. The judgment of divorce was entered on February 20, 2001. On December 10, 2001, almost ten months later, Clyde filed a "Motion to Interpret Agreement." In the motion, Clyde made no mention of the penalties and interest stemming from the late filing of the 2000 return. Rather, he sought to have the court interpret the agreement to require Dana to pay "$30,000 toward the parties's joint income tax debt and preparation expenses for the years 1998, 1999 and 2000, irrespective of any joint payments made before the parties' divorce agreement, together with reasonable attorney fees and costs for the prosecution to this motion."
¶ 22. In the motion, Clyde zeroed in on the word, "arising" and pleaded:
The word "arising" in . . . paragraph [XVI] makes clear that Dana's $30,000 obligation is based upon the amount due for taxes as may be determined after the agreement was signed and after the tax returns were prepared. She agreed to a future obligation. The tax returns had not been prepared at the time the agreement was signed and no one knew what the tax obligation would be. However, both parties knew that it would be significant. Dana saw it in her interest to limit her liability for income taxes to be determined due by the future preparation *206 of the returns to no more than $30,000 and struck her bargain thus.
The preparation of the returns resulted in a total obligation for the years 1998, 1999 and 2000, including preparation costs, in the amount of $78,697. With Dana paying $30,000, Clyde is still left paying $48,697. This is a significant savings to Dana. Dana's intentions in limiting her liability to $30,000 are therefore brought to fruition. The pre-agreement payment for which Dana asserts credit was made from joint funds and were paid toward joint income taxes then due. Therefore, both Clyde and Dana were already given credit for the joint payment against joint income taxes due before they signed their divorce agreement and the joint payment simply reduced what they both already jointly owed.
If Dana were to now be given credit again for one-half of the pre-agreement payment, she would, in effect, thus be given credit twice for the same payment since the pre-agreement payment had already been credited against what she already owed when the divorce agreement was signed. To further reduce her obligation by one-half of the amount they both paid toward joint income taxes before the agreement was signed would result in an unanticipated and unearned windfall for Dana and would be out of step with the clear intentions of the parties and the clear meaning of the agreement.
¶ 23. It is more than clear from the above quotes from Clyde's motion to interpret agreement that he subsequently realized that Dana had out bargained him, and he desperately sought an avenue to mitigate the burden caused by his being out bargained. That this is in fact the case is further supported by the argument made by Dana's counsel at the hearing on the motion.
So we got to talking about it, and the parties discussed it and felt like the liability was going to be about $65,000 or so, but they didn't know. They didn't know. So consequently, it was agreed on or thrown out, I believe by Mr. James, that we would take your order but limit her liability on your order to $30,000.
Remember, because we were talking and thinking it was going to be $65,000. With that being the case, Clyde would be eating about $5,000. But the reason we told him to do that, I did, was because it would cost him that much to try the case.
* * * *
So our position is, legally, Your Honor, that it is clear, that it says what it says, and that the use of the word "arising," that's a gerund. That's not a past tense verb. It's a gerund which calls for future action, not past action. And the use of the gerund "arising" is clear. I mean, they didn't know. So whatever was going to happen in the future, then she was only going to be on the hook for $30,000 of it. It turns out now that it's about $85,000 or so, give or take, with the preparation costs. And so she got a real good premium. Even under this agreement, Judge, she came up out pretty good, because it was more than they thought it was going to be. But that's what he agreed to, and he'll just have to live with the 30.
So it's our position she's limiting her future liability of $30,000, and it's clear.
¶ 24. Following the hearing on the motion on January 10, 2002, the chancellor made the following ruling from the bench:
After having reviewed the language in the agreement in paragraph 14[sic] of *207 the parties child custody and property settlement agreement filed in these proceedings, the Court is of the opinion that the parties entered into an agreement whereby they both agreed to take equal responsibility for income tax deficiencies and/or liabilities arising out of their 1998, 1999, 2000 tax obligations, and that they further agreed that the wife's total contribution towards these tax liabilities would be limited to $30,000. That amount including any accounting fees.
¶ 25. Following the bench ruling and not to be denied, Clyde's counsel continued to press his client's case:
[COUNSEL FOR CLYDE] The IRS wrote Mr. Mason and told him he owes $6,000 in penalties and interest because the tax return was filed late. It was filed late because she wouldn't sign it, and Ms. Reeves [sic] testified to that. She wouldn't come sign it, Judge. Why should he pay the penalties and interest when she wouldn't sign the darned thing until you made her do it?
THE COURT: Now what's your concern about that?
[COUNSEL FOR CLYDE] I want you total [sic] make her pay that. Why is it his fault she wouldn't sign the return? She didn't sign it until you made her do it in court that day. Now, had she signed it when you told her to several months earlier, we wouldn't have this problem. That's it.
THE COURT: I do recall the situation regarding the tax, and I do recall the witness on the witness stand saying that the taxpayers were ready on that particular day, and I do recall there being some discords as to why things had not been signed prior to  pursuant to notices that had been given.
If there is a tax penalty stemming from failures of these parties on tax obligations for 1998, 1999, 2000, those obligations are to be shared. Anything further?
¶ 26. On February 1, 2002, the chancellor signed an order in which she stated in pertinent part:
The Court finds that the objection of the Plaintiff to going forward with the motion on the basis of the parol evidence rule is well taken, the Plaintiff asserting that the divorce agreement of the parties is clear and unambiguous to the effect that the Plaintiff should be given credit for one-half of the amount the Defendant paid toward joint income taxes due for 1998, 1999 and 2000 from a joint account of the parties during the pendency of the parties' divorce proceeding.
IT IS THEREFORE ORDERED AND ADJUDGED that paragraph 16 of the Child Custody and Property Settlement Agreement is clear and unambiguous and the Court finds that the Plaintiff, Dana Mason should be given credit for one-half of the amount the Defendant paid toward the joint income taxes due for 1998, 1999, and 2000 from a joint account of the Plaintiff and Defendant and that the Plaintiff, Dana Mason has satisfied her obligations under Paragraph 16 of the Child Custody and Property Settlement Agreement.
¶ 27. Notwithstanding her finding that the agreement was clear and unambiguous and that parole evidence would not be allowed to contradict the terms of the agreement, the chancellor, on February 21, 2002 entered an order entitled "Order on Motion to Pay Penalties and Interest." In the order, the chancellor found "that the 2000 joint income tax returns were prepared and ready to be signed and filed within [sic] the IRS and Mississippi State Tax Commission deadlines for filing without penalties and interest, but said returns were not filed timely." The chancellor *208 then ordered "that both parties shall share equally in any penalties and interest assessed by the IRS and Mississippi State Tax Commission."
¶ 28. Several observations are in order here. First, it appears that the chancellor lacked the jurisdiction to enter the order of February 21. The record does not reflect the filing of a motion to alter or amend judgment after the entry of the February 1 order. Second, there is no factual basis in the record before us for the finding that the chancellor made in the February 21 order. Third, once the chancellor found on January 10, 2002, and February 1, 2002, that the agreement was clear and unambiguous, there was no basis for consideration of parole evidence to alter or amend the terms of the agreement. As already noted, the chancellor found that parole evidence would not be allowed to alter or amend the agreement, yet, it appears that the chancellor accepted evidence in the form of counsel's argument to alter or amend the agreement. Otherwise, it is inexplicable how the chancellor could have reached the results she reached in her order of February 21. Fourth, it appears pretty evident that all of what counsel represented to the court, to justify a modification of the agreement, during the hearing on January 10, 2002, occurred prior to the parties entering into the agreement on February 9, 2001.[1]
¶ 29. The record does not inform us when the tax returns were filed nor does it inform us of any interim orders, addressing their filing, if any such orders were entered. It appears that the parties's divorce was set for trial on September 11, 2001, although the record is not entirely clear on this point.[2] What we do know is that the parties worked out their differences which allowed an irreconcilable differences judgment of divorce to be entered on February 20, 2001, with the agreement, which is the subject of this appeal, attached to it and incorporated therein.
¶ 30. During the hearing on January 10, 2002, on the motion to interpret the agreement, no testimony was taken. Therefore, it is an inescapable fact that all the allegations of fact offered by Clyde's counsel in support of the motion were allegations concerning what transpired prior to the agreement. Even the chancellor's recitation of what she recalled regarding the tax returns dealt with matters that were in contention prior to the parties' entering into the agreement in question. That being the case, I can find no basis for altering the terms of paragraph 16 of the agreement incorporated into the judgment of divorce. Any past conduct on the part of Dana, which Clyde thought was responsible for some of the penalties and interest that the parties would eventually have to pay, should have been dealt with in the agreement. It was not.
¶ 31. Therefore, for the reasons presented, I would reverse and render the judgment of the chancellor.
GRIFFIS, J., JOINS THIS SEPARATE WRITTEN OPINION.
NOTES
[1] The agreement was filed on the date of the judgment of divorce, February 21, 2001.
[2] The record contains a subpoena ad testificandum/subpoena duces tecum [sic] for Clyde R. Mason, Jr. to appear on September 11, 2000, before the Chancery Court of Madison County.