379 So.2d 297 (1980)
Harneitha E. MAXEY and Louis T. Maxey
v.
Joyce GLINDMEYER.
No. 51554.
Supreme Court of Mississippi.
January 16, 1980.
Hopkins & Logan, Alben N. Hopkins, Larry L. Lenoir, Gulfport, for appellants.
Gex, Gex & Phillips, Gerald C. Gex, Bay St. Louis, for appellee.
Before PATTERSON, C.J., and SUGG and COFER, JJ.
COFER, Justice, for the Court:
Appellants, Harneitha Maxey and her husband, Louis T. Maxey, (the Maxeys or Maxey) filed this suit in the First Judicial District of Harrison County against Mrs. Joyce Glindmeyer having to do with a land sale contract as later to be noticed herein. Mrs. Glindmeyer filed a cross bill. The Maxeys have appealed here from an adverse *298 decision in the lower court. They assign the following errors:
1. The court erred in finding that appellants breached the contract with appellee, and in finding that the $75,000 earnest money is awarded to appellee for breach of contract.
2. The court erred in not granting to appellants some relief under the undisputed facts of this case.
3. The court erred in applying the doctrine of laches.
4. The court was biased and prejudiced against the appellants.
5. The court erred in finding that the contract is to be construed more strongly against appellants.
We affirm in part and reverse and remand in part the decision appealed from.
Appellant Louis T. Maxey is a physician living and practicing medicine in Milwaukee, Wisconsin. Wishing to move to Mississippi to live and practice medicine, the Maxeys contacted Joseph Buccola, a land sales director, who brought them into touch with Mrs. Glindmeyer and her husband, who owned a residence, "Oak Crest Manor", (apparently aptly described as a mansion) with an area of land on which it sat and surrounding it. After extensive close examination of the interior of the residence and the land and after having had the boundaries pointed out to Dr. Maxey, he, Dr. Maxey, entered into a contract for the sale and purchase of the residence and land. This contract was executed on May 15, 1977, and reference will be made to it herein as the May 15, 1977, contract.
Acreage is an important issue and we note here that the May 15, 1977, contract included "grounds measuring about 800' X 800' or as per title... ." This contract provided for a consideration of $150,000 of which $15,000 was to be in cash, the remainder of the purchase consideration to be paid in installments. This contract also provided that the seller would pay the cost of a survey. (There were notes for $27,000 and $25,000 executed by Dr. Maxey on the day of the contract, but do not appear to be for part of the consideration. The record does show that Dr. Maxey paid $75,000 down on the purchase price rather than $15,000).
The purchaser's position was that the seller was to procure an option to purchase in adjoining tract of approximately seven acres, which option was to be concurrent with the contract, but was not provided by oversight on the seller's part.
The Maxeys were concerned that the option did not in fact accompany the contract, and there were communications between the parties relative to it. Dr. Maxey went to an attorney-real estate broker in Milwaukee, who prepared another contract in August, 1977, which was sent to Mrs. Glindmeyer, after being signed by Mrs. Maxey. This proposed contract, never signed (called hereinafter as the August 1977 contract) referred to an Exhibit B to it for legal description of the property which purported to be a metes and bounds description. The proposed contract recited that the legal description attached to it had a frontage of about 800 feet and a depth of about 800 feet. Another exhibit had as a condition the buyer's ability to obtain financing within a specified time, recited a total consideration of $200,000, and in other particulars, the proposed contract was different from the May 1977 contract. The exhibit to the August 1977 contract provided that the total area would be thirteen acres or more, the May 1977 contract notwithstanding, and that the agreement as to the acreage was of the essence of the contract.
After months of effort to arrive at an agreement which would be compatible with Dr. Maxey's position as to the contract reached between the parties, there was, as a result of the joint work of the attorneys for both parties, a contract executed on February 17, 1978, signed by the seller and the buyer, and also signed by Coast Heavy Equipment, owner of the additional acreage desired by the Maxeys. This contract contains certain provisions which are vital to the present suit. They are:
1. The seller hereby agreed (sic) to sell to the purchasers that property known as *299 Oak Crest Manor, located on Menge Avenue, Pass Christian, Mississippi, on grounds measuring approximately eight hundred feet (800') by eight hundred feet (800') consisting of 13 acres or more, and more particularly described on Exhibit "A" attached hereto and made a part hereof.
* * * * * *
4. It is agreed and understood between the parties hereto that should the purchaser desire a survey this cost shall be borne by them.
* * * * * *
8. In the event that the purchaser fails to comply within the time specified, the seller shall have the right to declare the $75,000 of the deposit, ipso facto forfeited as liquidated damages without formality beyond tender of title to the purchaser; or the seller may demand specific performance.
* * * * * *
12. It is agreed and understood between the parties that there was an agreement between the parties prior to the formulation of this instrument; however, this instrument supersedes any and all prior agreements, and shall be considered the final instrument for the sale and purchase of the property herein described.
May 15, 1978, was fixed as the final date for the sale to be accomplished, and the contract also contained in one of its clauses further as to Coastal Heavy Equipment's performance of its option as to the additional premises on closing of the sale contracted in the instrument.
Exhibit "A" to the contract is a metes and bounds description of the property to be sold and bought between Mrs. Glindmeyer and the Maxeys.
Thereafter, the Maxeys caused a survey of the land to be made, which survey revealed that there were only 8.3 acres in the purchase from Mrs. Glindmeyer. The survey was made in April 1978, and, on May 12, 1978, Mrs. Maxey through her attorney sent a letter to Mrs. Glindmeyer, c/o attorneys, as follows:
This is to advise that a survey of the property you own reflects only 8.3 acres as opposed to the 13 or more acres called for in the Contract of Sale. This information was passed along to your attorney on or about the 11th of May, 1978.
Due to the deficiency in the quantity of land, we feel that the Contract of Sale has been breached and we call upon you to return to Mrs. Maxey the deposit of $75,000 with interest and the Promissory Notes executed by Dr. Maxey. If this cannot be accomplished by May 15, 1978, Dr. and Mrs. Maxey will have no alternative but to file suit in this matter.
The $75,000 earnest money and the notes demanded by the Maxeys were not surrendered to the Maxeys.
On May 15, 1978, Mrs. Glindmeyer and her attorney went to the office of the Maxeys' attorney with an unexecuted warranty deed to the property, which was never delivered because their attorney contended the Glindmeyers had breached the contract, and the sale was never consummated.
On May 15, 1978, the Maxeys sued to rescind the contract of sale, for return of the $75,000 with interest, and for expenses incurred through Mrs. Glindmeyer's breach of the contract and for lien against the property. To support their prayer for relief, they charged the breach to be in Mrs. Glindmeyer's failure and inability to convey to them the number of acres in gross, and by her cross bill she prayed for decree holding the contract to have been breached by the Maxeys, that the deposit of $75,000 had been forfeited, that lis pendens notice the Maxeys had caused to be given be cancelled, and that she be awarded damages incurred in her removal of her household effects to the house she bought and improved in anticipation of the sale of Oak Crest Manor, and other losses to her.
The chancellor rendered a decree wherein there were incorporated extensive findings of fact. Included in these were conclusions that the Maxeys breached the contract; that acreage was not of the essence of the *300 contract; that the Maxeys visited the property on several occasions, and viewed it meticulously on these occasions; that the Maxeys were guilty of laches in failing to determine much earlier the status of the area of the property; and that there was something of a fixed determination on their part to escape the binding effect of the sale contract.
By the decree, there was adjudicated a forfeiture of the $75,000 deposit, Mrs. Glindmeyer was required to surrender the two notes of $27,000 and $25,000 and the Maxeys were ordered to cancel the lis pendens notice.
From this decree, the Maxeys have appealed.
The chancellor, upon highly contradicted testimony, found the fact that the acreage to be sold was not of the essence of the contract and correctly applied the law thereto. Dr. Maxey testified to constant protestations that they must have twenty acres in the transaction with Mrs. Glindmeyer including the approximately seven acres anticipated from Coast Heavy Equipment Company, Incorporated. Testimony on Mrs. Glindmeyer's behalf strongly denied this insistence of Dr. Maxey.
The February 1978 contract, the last enunciation of the parties' agreements and understandings, and specifically declared to be so by its paragraph 12 hereinabove quoted, contracts for the sale and purchase of property limited in five ways: (1) Oak Crest Manor; (2) on Menge Avenue, Pass Christian, Mississippi; (3) on grounds measuring approximately 800 feet by 800 feet; (4) consisting of 13 acres or more; and (5) more particularly described in an exhibit to the contract. The general description "Oak Crest Manor" would have sufficed to convey the realty encompassed within the boundaries of Oak Crest Manor. The contract, however, went further to include a metes and bounds description, and the record fails to reflect where, if anywhere, the exhibit fails faithfully to describe Oak Crest Manor. The Maxeys' survey accomplished in April 1978 reveals what must have been apparent from the examinations of the land by Dr. Maxey: the ground of Oak Crest Manor has a nearly straight south boundary; has Menge Avenue as its eastern boundary and has no north and west boundaries, but is in the shape of an irregular triangle with the boundary from the northern corner on Menge Avenue to the property's southwest corner being the meanderings of Bayou Portage. It must have been obvious to Dr. Maxey from the beginning that the area could not accommodate itself to a description of approximately 800 feet by 800 feet.
We conclude that the general description "Oak Crest Manor" and as described by the exhibit to the contract, prevails. Dochterman v. Marshall, 92 Miss. 747, 46 So. 542 (1908); Barksdale v. Barksdale, 92 Miss. 166, 45 So. 615 (1907). We likewise conclude that the contract was for the sale of "Oak Crest Manor", a package, in bulk, or in gross, and not by the acre. The "consisting of 13 acres or more," is merely descriptive and not a representation amounting to a warranty on Mrs. Glindmeyer's part. It is elementary to say, in the light of what was otherwise described, there could not be conveyed the land by the description and by the number of acres recited, for there is not land in Oak Crest Manor with the metes and bounds description sufficient to inclose thirteen acres or more. We cannot find that Mrs. Glindmeyer or those speaking on her behalf undertook to defraud the Maxeys in the transaction. 77 Am.Jur.2d, Vendor and Purchaser, sections 88, 90, 93, 98 and 99 (1975).
The chancellor was correct in his finding and adjudication that the Maxeys had breached the contract and in ordering cancellation of the lis pendens notice. We disagree with that part of the decree that forfeits ipso facto the $75,000 down payment, earnest money or forfeit, or penalty, or whatever name it may be called. Both parties, the Maxeys by original bill and Mrs. Glindmeyer by cross bill, have invoked the assistance of equity and, in doing so, have invoked equity principles controlling relief. Hooks v. Burns, 168 Miss. 723, 152 So. 469 (1934). Courts of equity are not friendly to *301 forfeitures. Hickory Investment Co. v. Wright Lumber Co., 152 Miss. 825, 119 So. 308 (1928). Equity abhors a forfeiture. New Orleans Great Northern Rr. Co. v. Belhaven Heights Co., 122 Miss. 190, 84 So. 178 (1920).
We appraise the decree entered by the court below as operating a forfeiture of the entire down payment without regard to whether Mrs. Glindmeyer has actually suffered $75,000 in damages or not. We believe this state of facts is such that there should be no part thereof allotted to her beyond a sum reasonably necessary to cover her actual damages. It is inequitable to award her any amount in excess thereof. Equity will enforce a contract for liquidated damages if such liquidated damages can be found to be reasonable and proper in the light of the circumstances of the case. Patrick Petroleum Co. of Michigan v. Callon, 531 F.2d 1312 (5th Cir.1976).
Through the adoption of the Uniform Commercial Code, the legislature has spoken on the subject of liquidated damages in sales of goods in Mississippi Code Annotated, section 75-2-718 (1972):
(1) Damages for breach by either party may be liquidated in the agreement but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or nonfeasability of otherwise obtaining an adequate remedy. A term fixing unreasonably large liquidated damages is void as a penalty.
We do not know, nor have we had drawn to our attention, a similar rule as to liquidated damages in land sales contract, but are influenced by the logic and reason of the law just quoted.
The forfeiture of the down payment is reversed and the cause is remanded for new hearing on the damages actually sustained by Mrs. Glindmeyer caused by the Maxeys' breach of the contract, and for entry of decree thereon in an amount only which will reimburse her for those damages. The decree is affirmed in all other respects.
AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE and BOWLING, JJ., concur.