977 So.2d 393 (2007)
Cynthia Scarborough THOMAS, Appellant
v.
Tom SCARBOROUGH and Marsha Scarborough, Appellees.
No. 2005-CA-02137-COA.
Court of Appeals of Mississippi.
November 27, 2007.
*394 Patrick M. Rand, Canton, attorney for appellant.
David L. Morrow, Jr., Brandon, John R. Elliot, Jr., attorneys for appellees.
EN BANC.
MODIFIED OPINION ON REHEARING
GRIFFIS, J., for the Court.
¶ 1. The motion for rehearing is granted. The original opinion is withdrawn and this opinion is substituted in lieu thereof.
¶ 2. In an interpleader action filed by M-Tec Title and Escrow Services, Inc., and joined by Appellant Cynthia Thomas, the chancellor awarded the $22,141.57 balance of the interpleader fund to Appellees Tom and Marsha Scarborough. Although the Scarboroughs breached a Lease Purchase Agreement for real property owned by Thomas, the court determined that an award of the funds to Thomas would constitute unreasonably large liquidated damages. Aggrieved by the trial court's ruling, Thomas appeals raising the following issues:
I. WHETHER THE CHANCERY COURT ERRED IN ADOPTING VERBATIM THE PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW SUBMITTED BY THE SCARBOROUGHS?
II. WHETHER THE CHANCERY COURT ERRED IN APPLYING MISSISSIPPI *395 CODE SECTION 75-2-718(1) TO THE DISPUTE INVOLVING A LEASE PURCHASE OF REAL PROPERTY AND THEREBY FINDING THE FORFEITURE OF THE $30,000 EQUITY PAYMENT TO BE UNCONSCIONABLE?
¶ 3. We affirm.

STATEMENT OF THE FACTS
¶ 4. On October 30, 2001, Tom and Marsha Scarborough entered into a Lease Purchase Agreement (Agreement) with Cynthia Thomas concerning real property located at 27 Thorngate Drive, Brandon, Mississippi 39042. The lease purchase contract, prepared by Thomas's attorney, provided that the Scarboroughs would lease the subject property for forty-eight months at the rate of $1,550 per month ("rent"), plus $5,481.52 per annum ("additional rent"), pay all ad valorem taxes due on the property during the term of the lease, and pay a $1,750 initial security deposit. At the conclusion of the lease term, the contract provided the Scarboroughs with an option to purchase the subject property for $54,815.18. The purchase price was computed as follows:

 Agreed Purchase Price: $224,900.00
 Prior Equity Credit $ 1,628.53
 Current Equity Credit $530,000.00
 Current Loan Balance $138,456.29
 ___________
 Purchase Price $ 54,815.18

The term "prior equity credit," in the amount of $1,628.53, represents the amount paid by the Scarboroughs prior to signing the Agreement, and the amount of $30,000, termed "current equity payment," represents the amount paid on the date of closing.
¶ 5. In May 2004, the Scarboroughs breached the Agreement by failing to timely pay rent. In July 2004, the Scarboroughs vacated the premises and requested that Thomas return the $30,000 equity payment and $1,750 security deposit; Thomas refused. The Scarboroughs filed a lis pendens on the property with the Chancery Clerk of Rankin County. When Thomas desired to sell the property to a third party, she agreed to deposit the disputed monies with the Rankin County Chancery Court in return for the Scarboroughs' release of the lis pendens. After deducting past due rent ($3,875), past due additional rent ($3,882.74), the Scarboroughs' share of unpaid property taxes ($1,770.44), and a pool repair bill ($80.25), Thomas deposited into the registry of the court, $22,141.57 withheld from the funds she received at the closing of the sale of the property to the third party.
¶ 6. On December 7, 2004, M-Tec Title and Escrow Services, Inc., joined by Thomas, filed its complaint for interpleader. The Scarboroughs answered the complaint and requested that they be awarded the interpleader fund. The basis of their argument was the existence of an alleged ambiguity of definitions in the contract between paragraphs two and ten, and on the assertion that the forfeiture clause, found in paragraph ten of the Agreement, constitutes an unreasonable liquidated damages provision and an unconscionable penalty under Mississippi Code Annotated section 75-2-718(1). Thomas argues that the parties were free to contract, the language of the agreement is clear and unambiguous, and the forfeiture of the disputed monies is not liquidated damages, but rather a down payment on the purchase of the property.
¶ 7. In the case sub judice, the chancellor ruled only on the contract, exhibits, and briefs submitted by the parties; no hearings or oral arguments were held. He determined that an ambiguity exists between paragraphs two and ten concerning what would be forfeited in the event of default, and that such ambiguity should be *396 construed against Thomas as drafter of the Agreement. Ruling for the Scarboroughs, the chancellor held that the award of the interpleader fund to Thomas would constitute an award of unreasonably large liquidated damages and therefore was an unconscionable penalty under Mississippi Code Annotated section 75-2-718(1). The chancellor further concluded that Thomas had failed to show any actual harm and had been made whole upon the resale of the property.

LEGAL ANALYSIS
I. WHETHER THE CHANCERY COURT ERRED IN ADOPTING VERBATIM THE PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW SUBMITTED BY THE SCARBOROUGHS?
¶ 8. Thomas argues that the chancery court erred in adopting verbatim the proposed findings of fact and conclusions of law submitted by the Scarboroughs. In support of her arguments, she asserts that the chancellor made no independent inquiry into the facts of the case, but merely rubber-stamped the proposed findings of fact and conclusions of law submitted by the Scarboroughs. The Scarboroughs, in turn, argue that the chancellor is well within his discretion to adopt verbatim a party's findings of fact and conclusions of law. Additionally, the Scarboroughs argue that the chancellor's findings of fact and conclusions of law were almost, but not completely, verbatim to those they submitted, and that the chancellor added his own findings, which tends to show independent insight and inquiry.

DISCUSSION
¶ 9. The Mississippi Supreme Court has held that a trial court may, within its sound discretion, adopt verbatim or almost verbatim the findings of fact and conclusions of law submitted by a party. Rice Researchers, Inc. v. Hiter, 512 So.2d 1259, 1266 (Miss.1987). However, less deference is afforded to the chancellor's findings when the chancellor adopts verbatim or "almost verbatim" one party's findings of fact and conclusions of law. Brooks v. Brooks, 652 So.2d 1113, 1118 (Miss.1995). The problem with adopting verbatim, or almost verbatim, the findings submitted by counsel is that these findings simply are not the same as findings independently made by the trial judge after impartially and judiciously sifting through the conflicts and nuances of the case. Still, under our standard of review, "[t]his Court will not disturb the findings of the chancellor when supported by substantial evidence unless the chancellor has abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." Sanderson v. Sanderson, 824 So.2d 623, 625-26, (¶ 18) (Miss.2002).
¶ 10. Upon review of the record, it is apparent that the chancery court adopted the proposed findings of fact and conclusions of law submitted by the Scarboroughs, subject to a few additions. We note that Thomas failed to submit findings of fact and conclusions of law on her own behalf to the chancellor. This Court recognizes the complexities and nuances of individual cases, which in addition to crushing trial court caseloads necessitate substantial reliance upon the submissions of trial counsel. Hiter, 512 So.2d at 1266. Therefore, this Court will not find such reliance to be in error so long as evidence exists which reasonably tends to support the chancellor's findings. Sanderson, 824 So.2d at 625-26(¶ 18). Here, the chancellor was asked only to determine whether the Agreement was clear on its face concerning the equity payment and security deposit, and whether the forfeiture of these payments constituted unconscionable *397 and unreasonably large liquidated damages. We are convinced that the chancery court committed no procedural error in adopting almost verbatim the Scarboroughs' proposed findings of fact and conclusions of law.
II. WHETHER THE CHANCERY COURT ERRED IN APPLYING MISSISSIPPI CODE SECTION 75-2-718(1) TO THE DISPUTE INVOLVING A LEASE PURCHASE OF REAL PROPERTY AND THEREBY FINDING THE FORFEITURE OF THE $30,000 EQUITY PAYMENT TO BE UNCONSCIONABLE?
¶ 11. Thomas argues that the chancellor erred in applying Mississippi Code Annotated section 75-2-718(1) to a contract for the lease purchase of real property, and also in finding a forfeiture of the $30,000 equity payment unconscionable. The Scarboroughs argue that the chancellor followed the precedent established by the Mississippi Supreme Court in applying the equitable concepts of section 75-2-718(1) to a contract involving real property and that the chancellor properly found the forfeiture of the $30,000 equity payment unconscionable.

DISCUSSION
¶ 12. Statutory interpretations are questions of law. Grand Casino Tunica v. Shindler, 772 So.2d 1036, 1038(¶ 8) (Miss.2000). "We conduct a de novo review for determinations of legal questions." Russell v. Performance Toyota, Inc., 826 So.2d 719, 721(¶ 5) (Miss.2002). Thus, in interpreting section 75-2-718(1) and its application to the Agreement now in dispute, this Court sits in the same position as if it were the Chancery Court of Rankin County. After thoroughly reviewing the Agreement, we conclude that it is clear and unambiguous on its face. The Agreement provided the terms of the lease, an option to purchase, and a specific provision for the forfeiture of all payments in the event of default. Both Thomas and the Scarboroughs performed dutifully under the terms of the Agreement for approximately two and a half years before the Scarboroughs breached the Agreement in May 2004, by failing to timely pay rent. The Scarboroughs now seek to recoup monies described in the Agreement as "current equity payment" ($30,000) and "security deposit" ($1,750), after having breached the Agreement. They argue that an alleged contradiction between paragraphs two and ten of the Agreement created an ambiguity concerning whether the current equity payment would be refunded in the event of breach by the lessee. Paragraph two, entitled "Rent/Lease Purchase," states in relevant part:
Lessor and Lessee agree that payments of Rent, Additional Rent, and taxes will not be refunded or credited to Lessee if Lessee fails to purchase the Property in accordance with the terms of this Lease and that all such payments will be deemed Rent earned by Lessor.
Paragraph ten, entitled "Default and Remedies" states in relevant part:
If a forfeiture is enforced at the sole option of the Lessor, Lessee shall forfeit all rights and interest in and to the Property and all appurtenances thereto and shall immediately surrender to Lessor peaceable possession of the Property and further shall forfeit all payments made hereunder together with all improvements placed on or in or made to the Property.
(emphasis added).
¶ 13. The Scarboroughs contend that the failure of paragraph two to include the equity payment and security deposit as "payments" that would not be *398 refunded, renders the forfeiture of "all payments" under paragraph ten ambiguous, and that since Thomas's attorney prepared the contract, any ambiguity should be construed against Thomas. Undoubtedly, "ambiguities in a contract are to be construed against the party who drafted the contract." Mason v. Mason, 919 So.2d 200, 204(¶ 12) (Miss.Ct.App.2005) (citing Banks v. Banks, 648 So.2d 1116, 1121 (Miss.1994)). However, we find no ambiguity in the Agreement, as there is no conflict between paragraph two and paragraph ten. Paragraph two speaks only to the payments of rent, additional rent, and taxes as being non-refundable. The language used in the Agreement is standard contract language; the meaning is clear and does not in any way preclude the contract from separately establishing remedies available to the parties in the event of default. Paragraph ten, entitled "Default and Remedies," clearly provides that in the event of default the lessee "shall forfeit all payments made hereunder [the Agreement]."
¶ 14. Alternatively, the Scarboroughs argue that, even if the Agreement is unambiguous, the forfeiture of the current equity payment is an unreasonably large liquidated damages provision under section 75-2-718(1). The code section provides:
Damages for breach by either party may be liquidated in the agreement but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy. A term fixing unreasonably large liquidated damages is void as a penalty.
Miss.Code Ann. § 75-2-718(1) (Rev.2002). Thomas argues that an application of this code section to a lease purchase of real property is in error because Title 75 is an adoption of the Uniform Commercial Code, only applicable to goods and services, and inapplicable to contracts concerning real property.
¶ 15. The Mississippi Supreme Court has recognized the logic behind the Uniform Commercial Code's treatment of liquidated damages in goods and services contracts, and has applied that logic to land sale contracts. Maxey v. Glindmeyer, 379 So.2d 297, 301 (Miss.1980). In that case, Dr. and Mrs. Maxey contracted to buy Oak Crest Manor from Joyce Glindmeyer. Id. at 298. The Maxeys made a $75,000 down payment. Id. The contract provided that if the Maxeys breached the contract, Glindmeyer "shall have the right to declare the $75,000 of the deposit, ipso facto forfeited as liquidated damages . . . or [she] may demand specific performance." Id. at 299. When the Maxeys breached, she exercised her option to keep the $75,000. Id. The court agreed that the Maxeys had breached. Id. at 300. However, it disagreed "that forfeits ipso facto the $75,000 down payment, earnest money or forfeit, or penalty, or whatever name it may be called." Id. (emphasis added). The court noted that "Both parties . . . have invoked equity principles controlling relief. Courts of equity are not friendly to forfeitures. Equity abhors a forfeiture." Id. at 300-01 (citations omitted). The court faulted the chancellor for:
operating a forfeiture of the entire down payment without regard to whether Mrs. Glindmeyer has actually suffered $75,000 in damages or not. We believe this state of facts is such that there should be no part thereof allotted to her beyond a sum reasonably necessary to cover her actual damages. It is inequitable to award her any amount in excess thereof. Equity will enforce a contract for liquidated damages if such . . . can be found to be reasonable and proper in *399 the light of the circumstances of the case.
Id. at 301 (emphasis added). The court extended the Uniform Commercial Code rule of forfeitures to the real estate contract:
Damages for breach . . . may be liquidated . . . but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or nonfeasability of otherwise obtaining an adequate remedy. A term fixing unreasonably large liquidated damages is void as a penalty.
Id. (quoting Miss.Code Ann. § 75-2-718). The court reversed and remanded to the chancellor to determine "the damages actually sustained by" Glindmeyer. Id. (emphasis added).
¶ 16. Maxey is on all fours with this case. This was a real estate contract where $30,000 was made as a down payment. The contract likewise gave Thomas the right to treat the Scarboroughs' failure to timely pay rent as a material breach and forfeit the $30,000. She exercised that option. As a result, the chancellor found not only that the forfeiture was an unreasonable assessment of damages, but also that there was no difficulty in proving the landlord's "loss"/profit. So long as there is substantial credible evidence to support this finding, we must affirm.
¶ 17. The contract makes clear that the only thing that Thomas gets as a result of the lease and non-exercise of the purchase option is rent ($1,550 per month), additional rent ($5,848.12 per year) and property taxes. By the contract's own express, unambiguous terms, she is not entitled to keep the $30,000 "current equity" payment unless (1) the Scarboroughs buy the house, or (2) as reasonable liquidated damages for breach of the rental agreement. Under the agreement, the Scarboroughs were obligated to rent the home for four years (from November 2001 through October 2005). They failed to timely pay rent in May 2004. They vacated the premises in July of 2004, with 16 months remaining on the lease. Thomas was paid through July of 2004. Thomas sold the house for $215,000 on November 9, 2004 and paid off the house's mortgage. Therefore, Thomas's damage calculation includes:

Expectation:
 16 months rent @ $1,550 per month $24,800.00
 16 months additional rent (5848.12 + (5848.12-3882.74)) 7,813.50
 16 months property taxes calculated as follows: 3,540.88
 8 months = 1,770.44
 2/3(1year) = 1,770.44
 1 year = 1,770.44(3/2)
 1 year = 2,655.66
 4 months = 1/3(2,655.66) = 885.22
 16 months = 2,655.66 + 885.22 = 3540.88
 16 Total 16 months expectation damages: 36,154.38
Less cover on the November 2004 sale:
 $215,000-132,029.01(mortgage)-14,012.81(closing costs) 69,028.05
Total realized by Thomas: $32,873.67 profit.

¶ 18. In other words, Thomas is $32,873.67 better off because of the Scarboroughs' breach. She therefore has no *400 damages.[1] In light of this, the forfeiture of $31,750 is an unreasonable penalty pursuant to Maxey. The chancellor so held, because he found that Thomas actually realized a profit from the breach. We agree.
¶ 19. Because she did not suffer any actual damages, but rather she profited over and above the $30,000, Maxey compels the conclusion that the $30,000 forfeiture was void as a penalty.
¶ 20. THE JUDGMENT OF THE CHANCERY COURT OF RANKIN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., MYERS, P.J., IRVING, CHANDLER, BARNES ISHEE AND ROBERTS, JJ., CONCUR. LEE, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., NOT PARTICIPATING.
NOTES
[1] It is worth noting that Thomas calculates her damages as only $4,000 after covering with the November sale. Even under her own analysis, she is only entitled to this much and the rest should be forwarded to the Scarboroughs.