# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-60291

United States Court of Appeals
Fifth Circuit

**FILED**

May 29, 2014

Lyle W. Cayce
Clerk

NANCY B. GARZIANO; RICHARD A. GARZIANO, SR.,

Plaintiffs–Appellants,

v.

LOUISIANA LOG HOME COMPANY, INCORPORATED,

Defendant–Appellee.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:11-CV-393

Before REAVLEY, PRADO, and OWEN, Circuit Judges.

PER CURIAM:*

The Garzianos entered into a sales contract with Louisiana Log Home
(LLH) for a log-cabin kit. After paying roughly 88 percent of the purchase price
the Garzianos informed LLH that they could not afford the final installment
plus higher than expected shipping costs. LLH refused to deliver the log cabin
and the Garzianos sued. The district court granted summary judgment in
favor of LLH on all of the Garzianos' claims. After summary judgment was
ordered, LLH sold a substantial portion of the logs to a third party. The

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 13-60291

Garzianos filed a Federal Rule of Civil Procedure 59(e) motion alleging that allowing LLH to keep the installment payments plus the proceeds from selling the logs was unreasonable. The district court denied this motion. We affirm the district court's order granting summary judgment on all issues except for the dismissal of the unjust enrichment claim. We conclude that the district court's summary judgment award on this claim, and its subsequent denial of the Rule 59(e) motion, was in error, because the Garzianos successfully demonstrated that permitting LLH to keep both the logs and the substantial bulk of the purchase price paid by the Garzianos constituted an unreasonable penalty under Mississippi law. Therefore we reverse this part of the district court's summary judgment ruling and render summary judgment on this issue in favor of the Garzianos. We remand the case back to the district court to conduct findings of fact on the extent of actual damages suffered by LLH.

**I**

Plaintiffs–Appellants Nancy and Richard Garziano signed a written sales agreement with Defendant–Appellee LLH to purchase a log-home kit and have it delivered to their property in Pass Christian, Mississippi. The sales agreement provided for the Garzianos to pay off the log-home kit in three installments. They agreed to make a down payment, a second payment within thirty days of delivery, and a third and final payment at delivery. After executing the first sales agreement, the Garzianos signed a second agreement for the purchase of additional logs to raise the ceiling height of the proposed home. Both sales agreements contained identical terms. They both specified that "[a]ll costs of transportation shall be borne by the purchaser," and that "[s]hipping charges are paid directly to the trucking company at the time of delivery by cash or personal check." Reading the two contracts together, LLH

2

agreed to deliver the entire log-cabin package at an "F.O.B. Factory Price" of $43,656.43. The sales agreements also stated that "all monies paid on this contract are earnest monies and that no refund will be made if delivery is refused or if this contract is terminated by the purchaser without the mutual consent of the seller."

The Garzianos successfully made the first two installment payments on the sales agreements, totaling $38,595. When the log-home package was in transit LLH notified the Garzianos that it would soon be delivered and that the Garzianos still owed $7,686.43. That amount included the third and final installments on both sales agreements as well as an additional $2,625.60 for transportation costs. The Garzianos informed LLH that they could not pay this last installment because they thought they had paid off the balance for the logs and that the shipping costs would be lower. LLH diverted the log kit to a warehouse and demanded the remaining payment for the logs.

The Garzianos filed this lawsuit against LLH in Mississippi state court alleging a number of causes of action including breach of contract, unjust enrichment, and various violations of the Mississippi Deceptive Trade Practices Act. The Garzianos alleged that LLH had represented that the second installment payment of $32,095 constituted the "full and final payment" for the log-home package and thus they did not believe they owed the third installment payment. The Garzianos also alleged that LLH had not informed them that the logs would be shipped from a third-party manufacturer in Tennessee rather than from LLH's headquarters in Holden, Louisiana. They alleged that this misrepresentation caused them to underestimate the potential shipping costs so that they did not have sufficient funds to pay for delivery when the logs were in route. LLH removed the case to the Southern

No. 13-60291

District of Mississippi on the basis of diversity because the Garzianos had alleged punitive damages far in excess of $75,000.  In its answer, LLH counterclaimed for breach of contract and sought either specific performance or contractual damages.  LLH did not specify the amount of damages it was claiming.

LLH filed a joint motion to dismiss the complaint or in the alternative a motion for summary judgment.  The district court granted summary judgment and dismissed each of the Garzianos' claims.  The district court found that the Garzianos had breached the contract by failing to make the third installment payment and therefore could not recover on their claims.  The district court did not evaluate the alternative argument of the Garzianos that contended that, even if the district court found that they had breached the contract, allowing LLH to keep *both* the amount paid as earnest money, about 88 percent of the full purchase price, as well as the actual log-cabin kit, was an unconscionable penalty.  The Garzianos raised this argument multiple times in the district court.  In their complaint, they labeled it as an unjust enrichment argument.  In their response to LLH's motion for summary judgment, under the heading "Count Two-Unjust Enrichment," they stated, "[t]he non-refundable deposit or earnest money provisions of the Sales Agreement are unconscionable and, therefore void" with a citation to Mississippi Code Annotated § 75-2-718, a provision that prohibits unreasonable liquidated damages.  In their reply brief to the second motion for summary judgment they again raised the issue that "[i]t is unconscionable that LLH[] claims both the log package and the whole purchase price."  But the district court granted summary judgment without ever reaching the merits of this claim.

No. 13-60291

Following the grant of summary judgment LLH moved for entry of final judgment under Rule 54(b) and both parties moved for summary judgment on LLH's counterclaims. At some point after this briefing, the Garzianos became aware that LLH had sold nine of the twelve logs intended for the Garzianos for $24,644.88 to another buyer. The Garzianos filed a motion for sequestration asking for this money to be deposited in the court's registry. On the same day, LLH filed a combined response and rebuttal to the outstanding motions notifying the court of this development. In this response, LLH claimed an outstanding $8,125.94 in damages which constituted lost profits due to the Garzianos breach as well as $5,700 in marketing costs. Four months later LLH corrected the record and notified the district court that far from suffering losses, LLH was actually "$5000.00 'up' on the total transaction." LLH requested that the court dismiss its now meritless counterclaims against the Garzianos.

The Garzianos then filed a motion to alter or amend the judgment under Rule 59(e). The motion reiterated their original breach of contract claims as well as their unjust enrichment claim. In this briefing, the Garzianos repeated the argument that "allow[ing] [LLH] to retain the overpayment by the [Garzianos] plus the remaining materials results in an unjust enrichment of [LLH] and an obvious injustice." This proposition was supported with citations to germane Mississippi case law dealing with unconscionable earnest money penalties. The district court summarily denied this motion repeating the same language used in the initial summary judgment: "The proceeds from the subsequent partial sale of the log home kit would have become relevant if it were necessary to address mitigation of damages. Because they were

5

unsuccessful on their claims, Plaintiffs were not entitled to damages." The Garzianos appealed.

## II

We review a district court's grant of summary judgment de novo, applying the same legal standards as the district court.[1] Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2]

We review the denial of a Rule 59(e) motion to alter or amend a judgment for the abuse of discretion.[3] "A district court abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence."[4] Purely legal questions, however, are still reviewed de novo.[5]

As a federal court sitting in diversity we apply the substantive law of the forum state.[6] The forum state in the present case is Mississippi. "If a state's high court has not spoken on a state-law issue, we defer to intermediate state appellate court decisions, unless convinced by other persuasive data that the higher court of the state would decide otherwise."[7] We review a federal district court's determination of state law de novo.[8]

---

[1] *Lindquist v. City of Pasadena, Tex.*, 669 F.3d 225, 232 (5th Cir. 2012).

[2] FED. R. CIV. P. 56(a); *see also Travelers Lloyds Ins. Co. v. Pac. Emp'rs Ins. Co.*, 602 F.3d 677, 681 (5th Cir. 2010).

[3] *Johnston & Johnston v. Conseco Life Ins. Co.*, 732 F.3d 555, 562 (5th Cir. 2013).

[4] *Id.*

[5] *Id.* (citing *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 405 (5th Cir. 2002)).

[6] *Learmonth v. Sears, Roebuck & Co.*, 710 F.3d 249, 258 (5th Cir. 2013).

[7] *Id.* (internal quotation marks omitted).

[8] *Johnston & Johnston*, 732 F.3d at 562.

No. 13-60291

### III

The Garzianos appeal the district court's grant of summary judgment on their breach of contract and misrepresentation claims, as well as their claim that LLH breached the duty of good faith and fair dealing. The Garzianos first allege that LLH violated § 75-2-503(1) of the Mississippi Code which imposes a duty to "hold conforming goods at the buyer's disposition and give the buyer any notification reasonably necessary" to enable the buyer to take delivery. Section 75-2-503(1) also states that the "manner, time and place for tender are determined by the agreement and this chapter . . . ."[9] The Garzianos contend that LLH violated this statute and thereby breached the contract by failing to notify them of the amount of shipping charges until only two days before delivery which constructively prohibited them from accepting delivery. The Garzianos allege that they were only informed that the shipping costs would be $2,625 on July 17, two days before delivery despite the fact that LLH was aware of this price months earlier. The argument seems to be that LLH's failure to inform the Garzianos of the price of delivery in a timely manner excused the Garzianos' later breach of the contract by refusing delivery.

This argument fails. As this is a breach of contract case any analysis must begin with the contracts themselves. Under Mississippi law, a contract should be read in its entirety so as to "give effect to all of its clauses."[10] "Our concern is not nearly so much with what the parties may have intended, but

---

[9] MISS. CODE ANN. § 75-2-503(1).

[10] *Brown v. Hartford Ins. Co.*, 606 So. 2d 122, 126 (Miss. 1992).

No. 13-60291

with what they said, since the words employed are by far the best resource for ascertaining the intent and assigning meaning with fairness and accuracy."[11]

The contracts in this case were simple and easily understood. They provided that "[a]ll costs of transportation shall be borne by the purchaser," that "[s]hipping charges are paid directly to the trucking company at the time of delivery by cash or personal check," and specified an "F.O.B. Factory Price." These contracts also made clear that the final price that would be paid, absent shipping costs, was $43,656.43. Thus the explicit terms of the contract put the Garzianos on notice that they had both not paid off the balance on the log-home kit and that they were responsible for any shipping costs.

The Garzianos only cite one case, *Ward v. Merchants & Farmers Bank*,[12] for the proposition that this lack of notice excused their performance under the contract. In *Ward*, the Mississippi Supreme Court held that the plaintiffs had sufficiently alleged a violation of § 75-2-503 to survive a motion to dismiss.[13] The plaintiffs, purchasers of personal property from the conservator of an estate, had alleged two violations of the statute. First, they alleged that the conservator had refused the plaintiffs access "to a substantial amount of the personal property they had purchased."[14] Second, they alleged that they had not been given notice that the time window to retrieve the property would expire seven months after they purchased it due to a clause in the deed to the real property on which the personal property was located.[15]

---

[11] *Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 752 (Miss. 2003).

[12] 394 So. 2d 1374 (Miss. 1981).

[13] *Ward*, 394 So. 2d at 1375.

[14] *Id.*

[15] *Id.* at 1376.

No. 13-60291

The facts of this case are noticeably different.  First, LLH never refused or restricted the access of the Garzianos to the log cabin.  Just the opposite. LLH was attempting to deliver the goods when the Garzianos breached by refusing to pay either the balance on the contract or the shipping charges— both of which they were obligated to pay under the contract.  Second, there was no undisclosed, expiring window of time during which the Garzianos were required to claim the log cabin.  According to the Garzianos' own affidavit, they were given reasonable notice of the date of delivery.  The affidavit states that LLH had contacted the Garzianos repeatedly in the month of July 2011 "insisting on a delivery date for the log cabin package."  The Garzianos successfully delayed the delivery date until July 17, 2011 when LLH advised the Garzianos that the package would be delivered on July 19, 2011.  It was at this point that LLH informed the Garzianos that they still needed to make the third installment payment and pay $2,625 for the delivery fee.  While the Garzianos may have been surprised at the size of the delivery fee, the notice provided to the Garzianos was not so deficient as to prevent them from effectively taking delivery so that their refusal to pay would be excused.  The only obstacle to taking delivery was the Garzianos' refusal to pay for the goods and the shipping costs.  As the district court correctly held, LLH's "'method of tender' was in compliance with the terms of the contracts."

The Garzianos' misrepresentation claim also fails.  The Garzianos allege that LLH misrepresented the source and geographic origin of the log cabin in violation of the Mississippi Deceptive Trade Practices Act (DTPA), Mississippi Code Annotated § 75-24-5.  They contend that LLH and its representatives misrepresented that the logs would be manufactured by LLH in Holden, Louisiana when in reality they were purchased from a third-party

manufacturer located in Tennessee.  To support this argument they rely on three pieces of evidence.  First, Glen Hood, a sales representative of LLH, allegedly told the Garzianos that "due to an ongoing drought his loggers had an enhanced opportunity to harvest cypress logs in an area that would normally be inundated by water."  Second, they point to the business card for LLH which identifies its "[m]anufacturing" contact as being James A. Hood from Holden, Louisiana.  Third, they point to language on LLH's website that states that, "Louisiana Log Home Company is a manufacture [sic] of logs for commercial and residential use" and which advertises that they use a superior manufacturing method patented by LLH to prepare the logs.  The district court found that this evidence was insufficient to create a genuine issue of material fact regarding a misrepresentation of geographic origin because none of these sources mentioned or stated that the logs ordered by the Garzianos would be manufactured by LLH or that they would be manufactured in Louisiana rather than Tennessee.  We agree.

Section 75-24-5 prohibits the "(b) [m]isrepresentation of the source . . . of goods . . ." and "(d) [m]isrepresentation of designations of geographic origin in connection with goods . . . ."[16]    The Garzianos have failed to proffer any evidence of statements that were materially misleading.  None of the tendered evidence states that the logs would actually be manufactured by LLH.  Nor does any of the evidence represent that the logs would be manufactured in Louisiana as opposed to Tennessee.  The only evidence that could arguably support the Garzianos' belief that the logs would be manufactured in Louisiana is the fact that LLH was headquartered in Louisiana and that James Hood's

---

[16] MISS. CODE ANN. § 75-24-5(2).

No. 13-60291

office in Louisiana was listed as the contact for "[m]anufacturing" inquiries. Neither of these are misrepresentations.  Further, the Garzianos have not presented any evidence that they would have fulfilled the contract had the shipping costs been lower.  At the time of the breach, the Garzianos refused to pay not only the shipping costs but also the third installment.  The district court did not err in granting summary judgment on this claim.

Finally, the Garzianos allege that LLH breached its duty of good faith in the performance of the contract, violating § 75-1-304 of the Mississippi Code. This claim is based on the same alleged misrepresentations discussed above. For the same reasons that these facts do not establish a violation of the DTPA, we do not find that they are sufficient to show "bad faith" which "violates standards of decency, fairness or reasonableness."[17]

## IV

The Garzianos do not appeal the grant of summary judgment on their unjust enrichment claim.  Rather, they appeal the district court's denial of their Rule 59(e) motion that re-alleged the unjust enrichment/earnest money claim. We hold that the district court abused its discretion in denying this motion to alter or amend the judgment.

The issue is whether LLH may have its cake and eat it too.  Under the district court's judgment, LLH is allowed to keep both the logs and the substantial payment made toward the logs by the Garzianos.  The Garzianos allege that having to forfeit their first two installment payments as earnest money is unjust enrichment or an unenforceable penalty under these circumstances.  Prior to the lawsuit the Garzianos had paid $38,595 of the

---

[17] *Cenac v. Murry*, 609 So. 2d 1257, 1272 (Miss. 1992).

$46,282.03 (including shipping costs) owed on the log cabin. After the district court's ruling on summary judgment, LLH disclosed to the court that they had also sold nine of the twelve logs destined for the Garzianos for a sum of $24,644.88. In short, LLH recouped substantially more money from the Garzianos' breach than they would have received from the Garzianos' performance under the contract.

"A motion to alter or amend judgment must clearly establish either a manifest error of law . . . or must present newly discovered evidence. . . . [T]hey cannot be used to argue a case under a new legal theory."[18] LLH's main argument on this issue is not that the Garzianos are incorrect on the merits, but that "the merits are immaterial as the Motion should be denied for failure to comply with the prerequisites of Rule 59(e) in addition to the fact that the issue of damages was not relevant to any matter before the Court." To support their argument LLH states that a "motion to alter or amend the judgment . . . 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'"[19]

But the Garzianos made this argument prior to the Rule 59(e) motion. The Garzianos raised the issue of the reasonableness of treating their installment payments as earnest money a number of times at the district court level. In their complaint, they labeled it as an unjust enrichment argument. In their response to LLH's motion for summary judgment, under the heading "Count Two-Unjust Enrichment," they stated, "[t]he non-refundable deposit or earnest money provisions of the Sales Agreement are unconscionable and,

---

[18] *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005) (internal quotation marks omitted).

[19] *See Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990).

therefore void" citing Mississippi Code Annotated § 75-2-718, a provision that bars unreasonable liquidated damages.  They also cited *Maxey v. Glindmeyer*,[20] a Mississippi case, which held that it was "inequitable" to award a seller both "the entire down payment," which constituted half the purchase price, and allow them to keep the goods (in that case a house), after the buyer breached the contract.[21]  Instead, the court held that recovery should be limited to actual damages.[22]  In rebuttal, LLH engaged this argument, contending that the earnest money forfeiture was not unconscionable.  Next, before the court ruled on summary judgment, LLH filed a second, supplemental summary judgment motion.  In this motion, LLH again put forward the argument that the amount of earnest money was reasonable because it had "largely served" its intended purpose.  The Garzianos filed a response that again raised the issue that LLH had "failed to produce any proof that its position is commercially reasonable that the Garziano[s'] payments were 'earnest money.'"  The Garzianos then are not seeking to shoehorn a new legal theory via Rule 59(e)—rather they are re-alleging a legal theory raised in the district court.

Now, it is true that by labeling the claim "unjust enrichment" the Garzianos appear to have confused the district court.  The district court granted summary judgment on the "unjust enrichment" claim on the ground that such claims cannot be brought in a contract case.[23]  But the Garzianos were not alleging a traditional unjust enrichment claim.  They were alleging

---

[20] 379 So. 2d 297 (Miss. 1980).

[21] *Maxey*, 379 So. 2d at 298, 300-01.

[22] *Id.* at 301.

[23] *See Johnston v. Palmer*, 963 So. 2d 586, 596 (Miss. Ct. App. 2007).

that the earnest money provision of the contract was an unenforceable penalty. The fact that the Garzianos may have mislabeled this argument is not dispositive. "Courts must focus on the substance of the relief sought and the allegations pleaded, not on the label used."[24] Further, it is not at all clear labeling the claim as one for "unjust enrichment" was even incorrect. The Mississippi Supreme Court has previously framed the inequity of permitting a nonbreaching party to collect on the contract and keep the goods as "unjust enrichment."[25]

Thus, this claim was raised before the district court. This is the proper use of a Rule 59(e) motion if it is based on either of the following: an alleged legal error by the district court or the discovery of new evidence.[26] Here, both are present. First, the district court committed a legal error because it never addressed the merits of their claim. Instead, the district court granted summary judgment by summarily stating that an unjust enrichment claim cannot be based on contract. The court said that, "to bring a successful unjust enrichment claim in Mississippi, the 'claimant must show there is no legal contract but the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain, but should deliver to another.'"[27] The court did not address either the substance of the

---

[24] *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citing *Edwards v. City of Hous.*, 78 F.3d 983, 995 (5th Cir. 1996) (en banc)).

[25] *See G.B. "Boots" Smith Corp. v. Cobb*, 860 So. 2d 774, 779 (Miss. 2003) ("Use of this calculation, however, would result in unjust enrichment because [the nonbreaching party] would receive lost profits and still be in possession of the [goods], which they could sell to another purchaser.").

[26] *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005).

[27] *See Johnston*, 963 So. 2d at 596 (alterations and internal quotation marks omitted).

No. 13-60291

Garzianos' argument which was primarily about the punitive nature of the earnest money/liquidated damages provision of the sales agreement, nor did it address the Mississippi case law cited by the Garzianos that linked liquidated damages to unjust enrichment. The failure to address a key legal argument is an appropriate basis for a Rule 59(e) motion.[28]   Second, the motion for summary judgment was granted before LLH notified the district court that it had sold a substantial portion of the remaining logs—new evidence that justified reevaluating the Garzianos' claim. Thus, the Rule 59(e) motion was procedurally proper.

Not only was the Rule 59(e) motion procedurally proper, but it should have been granted. Under Mississippi law, the "earnest money" provision in this contract was an unconscionable penalty.   The Supreme Court of Mississippi has held that it is inequitable for a seller to retain both part of the product that was the subject of the sales contract as well as the entire sales price.[29] In *G.B. "Boots" Smith Corp. v. Cobb*,[30] the defendant, "Boots," entered into a contract with a landowner, Cobb, to buy all the "fill dirt" Boots needed to carry out a specific contract with the Mississippi highway department.[31] The price was set at 40 cents per cubic yard.[32]   After purchasing roughly

---

[28] *See, e.g.*, *Smith v. Alumax Extrusions, Inc.*, 868 F.2d 1469, 1472 (5th Cir. 1989) (remanding a case on the basis of a Rule 59(e) motion for the purpose of allowing the district court to rule on contentions it had previously failed to address); *see also United States v. Carmouche*, 70 F.3d 1269, 1995 WL 696814, at *6 (5th Cir. 1995) (unpublished) ("Because it is unclear from the district court's Order . . . which course of action the court pursued, we . . . remand[] so that the court can make specific findings of fact and conclusions of law . . . .").

[29] *G.B. "Boots" Smith Corp.*, 860 So. 2d at 779.

[30] 860 So. 2d 774 (Miss. 2003).

[31] *G.B. "Boots" Smith Corp.*, 860 So. 2d at 776.

[32] *Id.*

440,000 of the 550,000 cubic yards that were needed from Cobb, Boots started purchasing fill dirt from a third party.[33]  Cobb sued and the trial court awarded damages by multiplying the contract price by the amount of dirt that was not purchased from Cobb.[34]  The Mississippi Supreme Court reversed on the basis that this formula was erroneous, because it inequitably allowed Cobb to keep the remaining 110,000 cubic yards of dirt *and* get the full value of the contract.[35]  "Use of this calculation . . . would result in unjust enrichment because the Cobbs would receive lost profits and still be in possession of the fill dirt, which they could sell to another purchaser."[36]  Instead, the appropriate measure of damages could be calculated pursuant to Mississippi Code Annotated § 75-2-708: either as the difference between the agreed price and the market value of the remaining goods or as the "profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages."[37]  Under this measure of damages the district court in this case—like the district court in *Boots*—improperly allowed the non-breaching party to be unjustly enriched at the expense of the breaching party.

*Boots* is distinguishable because in the present case there was an earnest money provision.  The Sales Agreements state that, "[i]t is agreed that all monies paid on this contract are earnest monies and that no refund will be made if delivery is refused or if this contract is terminated . . . ."  An earnest

---

[33] *Id.*

[34] *Id.*

[35] *Id.* at 779.

[36] *Id.*

[37] *Id.* at 778-79 (quoting MISS. CODE ANN. § 75-2-708).

money provision is the equivalent of a liquidated damages provision.[38]  But earnest money provisions are still subject to a review for reasonableness under Mississippi law[39]—a review that the district court did not undertake.  The district court did not address the merits of this argument despite it being raised repeatedly below.

Under Mississippi law, a liquidated damages provision will generally be enforceable unless "the actual damage resulting from the breach may be readily ascertained."[40]  Here the actual damages are readily ascertainable—it is the contract price minus the amount paid minus the market value of the remaining goods plus any incidental expenses. Not only are the damages readily ascertainable, but the size of the earnest money provision likely makes it too punitive to be enforceable. It is not self-evident precisely where Mississippi draws the line for how large an earnest money provision must be to be declared unreasonable, but it is clear that a forfeiture of 88 percent of the purchase price falls on the unreasonable side of that line.

While a provision that results in a forfeiture of 10 percent of the contract price is considered reasonable,[41] damages provisions that require the forfeiture of one-half or more of the purchase price are generally unenforceable under Mississippi law.  "[W]here the liquidated damages are unreasonable, such as earnest money being fifty-percent of the purchase price, a party must then seek

---

[38] *Gunn v. Heggins*, 964 So. 2d 586, 594 (Miss. Ct. App. 2007) ("Earnest money is considered liquidated damages . . . .").

[39] MISS. CODE ANN. § 75-2-718(1) ("A term fixing unreasonably large liquidated damages is void as a penalty.").

[40] *Hovas Constr., Inc. v. Bd. of Trs. of W. Line Consol. Sch. Dist.*, 111 So. 3d 663, 667 (Miss. Ct. App. 2012).

[41] *Culbreath Revocable Trust v. Sanders*, 979 So. 2d 704, 712 (Miss. Ct. App. 2007).

to recover actual damages by demonstrating such damages were actually incurred."[42]   For instance, in *Maxey*, the Supreme Court of Mississippi found that a liquidated damages provision that caused a forfeiture of fifty percent of the purchase price of a residence ($75,000 of a purchase price of $150,000) was unreasonable.[43]  "Damages for breach . . . may be liquidated . . . but only at an amount which is reasonable in the light of the . . . actual harm caused by the breach."[44]

In another case, a Mississippi Court of Appeals held that a liquidated damages provision requiring the forfeiture of a $30,000 equity payment (plus a small security deposit) as part of a 48-month lease-purchase agreement for a piece of property was void as a penalty.[45]   It was void because the lessor—like LLH here—was actually better off after the breach (with the forfeiture) than she would have been absent the breach.[46]   In fact, the lessor had realized a $32,873.67 profit over what she would have received had the contract not been breached after she turned around and sold the property to a third party.[47]  "In light of this, the forfeiture of $31,750 [was] an unreasonable penalty."[48]

The above cases seem to be on all fours with the present case.   On their own admission, LLH is at least $5,000 ahead on the entire transaction, not to mention the three logs that evidently remain unsold.  By allowing LLH to keep

---

[42] *Id.*

[43] *Maxey v. Glindmeyer*, 379 So. 2d 297, 298, 301 (Miss. 1980).

[44] *Id.* at 301 (quoting MISS. CODE ANN. § 75-2-718(1)).

[45] *Thomas v. Scarborough*, 977 So. 2d 393, 395, 398-400 (Miss. Ct. App. 2007).

[46] *Id.* at 399-400.

[47] *Id.*

[48] *Id.* at 400 (citing *Maxey*, 379 So. 2d at 301).

the logs and the earnest money payment the district court essentially granted LLH an impermissible double recovery—making the earnest money provision an unenforceable penalty.  The district court's rationale for rejecting the Rule 59(e) motion does not stand up to scrutiny.  The district court rejected the Rule 59(e) motion by simply stating that "[t]he proceeds from the subsequent . . . sale of the log home kit would have [only] become relevant if it were necessary to address mitigation of damages."  This is circular.  Damages were only not an issue at that stage of the litigation because the district court had erred in the first place by failing to address the Garzianos' contention that the earnest money provision was an unconscionable penalty.  As we hold that the earnest money clause was a penalty, then the issue of damages is squarely before the court. Therefore, the district court abused its discretion in denying the Garzianos' Rule 59(e) motion.  The record does not make clear the actual amount of damages suffered by LLH.  We remand this case with instructions for the district court to make findings on the amount of actual damages that LLH suffered and to amend the judgment to remit to the Garzianos any monies paid to LLH under the contract that were in excess of LLH's actual damages.

\* \* \*

The district court's grant of summary judgment is AFFIRMED in part. The district court's grant of summary judgment on the unjust enrichment claim, as well as its denial of the Rule 59(e) motion, is REVERSED. The case is REMANDED to the district court for proceedings consistent with this opinion.

No. 13-60291

THOMAS M. REAVLEY, Circuit Judge, dissenting:

The court holds as a matter of law that the no-refund provision of the contract is an invalid penalty, without consideration by the district court and although unlikely prospects for resale of measured logs could justify that provision. Only a claim of unjust enrichment was before that court, submerged under the buyer's breach of contract claim. And this court orders the district court to award the seller his "damages" without saying anything about his profit for the performance of the contract the buyer breached. Then the court has issued a judgment saying the summary judgment for the seller is affirmed at the same time it says the seller loses the benefit of the contract. The issues now framed and resolved have not been developed and considered in the district court. Our judgment should be to vacate the judgment being appealed and to remand the case for that purpose.